IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

|  |  |  |  |
|---|---|---|---|
| ADAM DRUMMOND, | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | | |
| | ) | | |
| CAMDEN COUNTY SHERIFF JIM | ) | | |
| PROCTOR, in his official capacity, | ) | | |
| SHERIFF'S CORRECTIONS OFFICER | ) | | |
| LARRY PHELPS, in his official and | ) | | |
| personal capacity, SHERIFF'S | ) | | |
| CORRECTIONS OFFICER CORPORAL | ) | Civil Action File No. | **CV222-033** |
| JORDAN MALONE, in his official and | ) | | |
| personal capacity, SHERIFF'S | ) | | |
| CORRECTIONS SERGEANT LUIS | ) | | |
| VALLEJO, in his official and personal | ) | | |
| capacity, SHERIFF'S DEPUTY MAJOR | ) | | |
| ROB MASTROIANNI, SR., in his | ) | | |
| official and personal capacity, | ) | | |
| SHERIFF'S DEPUTY LIEUTENANT | ) | | |
| ERIC WATSON, in his official and | ) | | |
| personal capacity, SHERIFF'S | ) | | |
| CORRECTIONS OFFICER RAKITA | ) | | |
| DOUGLAS, in her official and personal | ) | | |
| capacity, SHERIFF'S CORRECTIONS | ) | | |
| OFFICER KENDALL BENJAMIN, in | ) | | |
| her official and personal capacity, | ) | | |
| SHERIFF'S CORRECTIONS OFFICER | ) | | |
| WILLIAM HATFIELD, in his official | ) | | |
| and personal capacity, and JOHN AND | ) | | |
| JANE DOES 1-3, in their personal and | ) | | |
| official capacities. | ) | | |
| Defendants. | ) | | |

## COMPLAINT

COMES NOW, Plaintiff ADAM DRUMMOND, in the above captioned action, by and

through their undersigned counsel of record, and files this Complaint and request for damages and

respectfully shows the Court the following:

## JURISDICTION AND VENUE

### 1.

Plaintiff is a resident of Youngstown, Ohio and submits himself to the jurisdiction and venue of this Court.

### 2.

Defendant Camden County Sheriff Jim Proctor is, and at all times herein mentioned, the Sheriff of Camden County, Georgia, and may be served at the Camden County Sheriff's Office, 209 E 4th Street, Woodbine, Georgia   31569.

### 3.

Defendant Phelps is, and at all times herein mentioned, a resident of Camden County, Georgia, who may be served at his last known address, 41 Garys Place, Kingsland, Georgia 31548.

### 4.

Defendant Malone is, and at all times herein mentioned, a resident of Duval County, Florida, who may be served at his last known address, 363 Sanwick Drive, Jacksonville, Florida 32218.

### 5.

Defendant Benjamin is, and at all times herein mentioned, a resident of Camden County, Georgia, who may be served at his last known address, 240 Herring Road, Woodbine, Georgia 31569.

6.

Defendant Douglas is, and at all times herein mentioned, a resident of Glynn County, Georgia, who may be served at his last known address, 2201 Whispering Oaks Drive, Brunswick, Georgia 31520.

7.

Defendant Vallejo is, and at all times herein mentioned, a resident of Camden County, Georgia, who may be served at his last known address, 114 Magnolia Court Kingsland, GA 31548

8.

Defendant Mastroianni is, and at all times herein mentioned, a resident of Camden County, Georgia, who may be served at his last known address, 234 Wood Duck Dr, Woodbine, GA 31569.

9.

Defendant Watson is, and at all times herein mentioned, a resident of Camden County, Georgia, who may be served at his last known address, 116 Overlook Bend Kingsland, GA 31548.

10.

Defendant Hatfield is, and at all times herein mentioned, a resident of Nassau County, Florida, who may be served at his last known address, 86156 Shady Oak Drive, Yulee, Florida 32097.

11.

Upon information and belief, Defendants John and Jane Does are, and at all times herein mentioned, residents of Camden County, Georgia.

12.

At all times herein mentioned, each of the individual defendants was the agent and employee of the Defendant Camden County Sheriff Jim Proctor and was, at least in part, acting within the purpose and scope of such agency and employment.

13.

This action is based upon the tortious acts and/or omissions committed by Defendants within the confines of Camden County, Georgia.

14.

This Complaint is brought under 42 U.S.C. § 1983 ("§ 1983").

15.

By virtue of the facts contained herein, this Court has jurisdiction and venue of the parties.

## **INTRODUCTION**

16.

This action is based an excessive and unwarranted beating Plaintiff endured at the hands of Camden County Sheriff's Corrections Officers and the subsequent efforts to cover up the wrongdoing.

17.

Pictured below are several of Plaintiff's initial injuries resulting from the Camden County Sheriff's Officer's use of force:



18.

As a result of the use of force, Plaintiff suffers from a traumatic brain injury ("TBI") and has been living with the long-term effects of that injury.

19.

After the Corrections Officers employed the use of force against Plaintiff, multiple other Corrections Officers engaged in a pattern and practice of illegal activity in covering up the crimes and torts of their fellow officers.

**FACTS**

20.

Up until the Fall of 2021, Plaintiff was a resident of Camden County, Georgia, and he had gainful employment with the City of Kingsland, Georgia.

*The Excessive and Unnecessary Use of Force*

21.

At or around 1:00 am on January 24, 2021, the Camden County jail officers received "intake" prisoner Plaintiff Adam Drummond, who the Kingsland Police Department arrested for driving under the influence of alcohol ("DUI").

22.

The Kingsland PD dropped Plaintiff off at the Jail through the "Sally Port" area, which is a covered entryway designed for prisoner drop-offs.

23.

Defendant Corrections Officer Phelps and other Corrections Officers received Plaintiff from the patrol car and escorted him from the Sally Port to the Intake Area of the jail.

24.

Upon entering the jail, Plaintiff was pat searched.

25.

No contraband was found on his person.

26.

Corrections Officer Laurie Brooks was waiting in the Intake Area to get information from Plaintiff to process or "book" him, including a medical questionnaire.

27.

Plaintiff did not want to answer the questions from Officer Brooks.

28.

However, Plaintiff was not aggressive or combative in any way.

29.

Difficulty in the intake process is common for DUI cases and, without physical provocation, is not cause of any escalation.

30.

While Defendant Phelps and Officer Brooks were booking Plaintiff in the Intake Area, Defendant Corrections Officer Malone arrived at the Intake Area from the Main Control Room.

31.

Defendant Malone immediately started escalating the situation with Plaintiff, and Defendant Malone decided to strip search him.

32.

Plaintiff did not demonstrate any behavior that would indicate that he possessed contraband, and he had no history of possession contraband or drugs.

33.

Officer Brooks left the Intake Area and went to the Main Control Room, at which time Defendant Corrections Officer Vallejo also decided to join Defendant Phelps and Defendant Malone in the Intake Area.

34.

Shortly after Officer Brooks left the Intake Area, Defendants Phelps, Malone, and Vallejo escorted Mr. Drummond to "Room 103," the area of the Jail where strip searches were conducted.

35.

There are no cameras in Room 103.

36.

At all times while in Room 103, Plaintiff was facing away from the three Defendants.

37.

Plaintiff remained non-aggressive.

38.

Within several minutes of the three officers and Mr. Drummond entering Room 103, the Defendants severely beat Plaintiff, as pictured *supra*.

39.

The Defendants beat him in the head and face, as well as shoulders and torso.

40.

Following the incident, Mr. Drummond's blood pooled on the floor.

41.

There was so much blood that it could not just be wiped up with towels; the whole floor had to be mopped.

42.

The officers then dragged Plaintiff out of Room 103 and restrained him in the Pro Restraint Chair.

43.

While in the Pro Restraint Chair, Plaintiff continued to bleed from the gashes to this head and face.

44.

Plaintiff's arms and legs were strapped to the chair, and he began pleading for medical attention. His face and head began swelling, and he started getting an extreme headache.

45.

Rather than call an ambulance or a nurse, Defendant Malone told Plaintiff that he was "fine," and Defendant Phelps wiped blood from his face and applied an ACE wrap to the open incision on Plaintiff's head.

46.

Plaintiff was not seen by a medical professional of any kind until the following morning, when he was taken the jail nurse.

47.

Corrections Officers escorted him into the examination room and refused to leave.

48.

Mr. Drummond complained of a severe headache, light sensitivity, and nausea.

49.

The Corrections Officers told the nurse he was "faking."

50.

After seeing the nurse, Plaintiff was able to post bond.

51.

In the outtake procedure, Defendant Hartfield coerced Mr. Drummond to make a false written statement that Plaintiff initiated the physical contact against the officers.

52.

Defendant Hartfield threatened Plaintiff with additional charges and a revocation of his bond if he did not write what he was told to say.

53.

Only after he wrote this false statement did the Sheriff's Office release Mr. Drummond from jail.

54.

Defendants Benjamin and Douglas were on also shift during the early morning hours of January 24, 2021, they were capable of preventing or mitigating the injuries to Mr. Drummond, and they failed to act.

*The Cover-Up*

55.

On January 25, 2021, Corrections Officer Staff Sergeant Jennie Sikes became aware that Defendants Phelps, Vallejo, and Malone implemented use of force tactics against Plaintiff, while he was an inmate the previous morning.

56.

In her role as Staff Sergeant, Officer Sikes was responsible for the implementation of correct policy amongst the Jail Officers, and where necessary, to investigate and recommend discipline for violations of policy.

57.

In this case, upon discovery of the use of force incident with Plaintiff, Officer Sikes investigated the incident, including saving all the necessary video and audio of the incident.

58.

Officer Sikes also obtained Defendant Phelps and Defendant Vallejo signed, original versions of the incident report narratives, which they authored on January 24, 2021.

59.

From her review of the incident, Sikes believed that the "use of force" was unnecessary and excessive, and she determined that Defendants Vallejo, Malone, Phelps violated multiple internal policies.

60.

Officer Sikes presented her conclusions to Defendant Watson.

61.

Defendant Watson agreed with Officer Sikes conclusions, and on January 28, 2021, Watson counseled Defendant Phelps, Vallejo, and Malone regarding the violations.

62.

Following the counseling, Defendant Watson advised Officer Sikes to move forward with preparing write-ups for each Defendants Phelps, Vallejo, and Malone.

63.

Following orders, Officer Sikes physically wrote Defendants Vallejo, Malone, Phelps up on February 1, 2021. Specifically, she wrote up Defendants Vallejo, Malone, Phelps for (1) conduct unbecoming of an officer, (2) failure to follow Strip Search Policy No. 3-2 (failure to establish probable cause for Mr. Drummond's strip search), (3) failure of the "the duty to know",

Policy No. 1-2, (4) failure to comply with duty of personal bearing and attention to duty, Policy No. 1-6, (5) dereliction of duty, Policy No. 1-5, (6) failure to observe and give effect to the policies of the office, (7) failure to obey or willful violation of any rule, regulation, or policy of the office, and (8) unnecessary violence toward any person.

64.

Officer Sikes then presented the incident investigation and write-ups to her supervisors, Defendants Watson and Mastroianni.

65.

Defendant Watson thereafter spoke to Defendant Mastroianni regarding the incident and the Defendants Vallejo, Malone, Phelps' conduct, and Defendant Mastroianni ordered that no action be taken against the Defendants Vallejo, Malone, Phelps.

66.

Defendant Mastroianni later stated to Officer Sikes that Defendants Vallejo, Malone, Phelps would not receive punishment because "punishing them would mean we are admitting to doing wrong," or something along those lines.

67.

All documentation regarding the write-ups was then destroyed, altered, or hidden.

68.

Following his decision to cover-up the improper use of force, Defendant Mastroianni then reviewed the remainder of the incident file to protect himself, the office, and the other officers.

69.

In particular, Defendant Mastroianni marked through the original narratives contained in the incident, edited certain language, and deleted certain language, and Defendant Mastroianni advised Defendant Phelps to implement his changes.

70.

Defendant Phelps complied and edited the original narratives.

71.

However, neither Defendant Phelps nor Defendant Malone signed the edited version.

72.

The original version was then destroyed or hidden, as it was not included in a response to an Open Records Request sent to the Camden Sheriff's Office in February of 2021.

*Damages*

73.

As a result of his injuries, Plaintiff sought medical treatment.

74.

Plaintiff currently has twenty-two thousand six hundred and six dollars and seven cents ($22,606.07) in medical bills.

75.

Plaintiff was also diagnosed with a traumatic brain injury (TBI) as a result of the head injury he received from Defendants Vallejo, Malone, Phelps.

76.

From the TBI Plaintiff is having difficulty at work, he is unable to socialize, he has severe tinnitus, he has had an onset of debilitating anxiety since the beating, and he has had trouble sleeping.

## CLAIMS UNDER 42 U.S.C. § 1983

### *Fourth Amendment Violations*

77.

Plaintiff re-alleges each and every aforementioned paragraph as if fully restated herein.

78.

Plaintiff was subject to an unreasonable strip search at the hands of Camden County Corrections Officers, acting under the color of law with the authority of the Camden County Sheriff's Office.

79.

Prisoners retain a constitutional right to bodily privacy, and under the Fourth Amendment, strip searches must be reasonable.

80.

The strip search of Plaintiff was unreasonable because Defendant Vallejo deliberately left the door to Room 103 propped open, allowing Officer Brooks (a female to see inside Room 103 while the strip search was occurring).

81.

The strip search of Plaintiff was also unreasonable because Defendants Vallejo, Malone, Phelps violated internal policy, which stated that strip searches are only permitted where the officers have probable cause to believe the detainee is concealing something. Plaintiff had already been pat searched, was not arrested on a violent offense or drug offense, and he posed no obvious threat. There was no probable cause to strip search him.

82.

The strip search violated internal polices of the Camden County Sheriff's Office.

83.

In the alternative, Defendant Sheriff Proctor failed to develop policies and procedures to protect the constitutional privacy of Camden County jail inmates.

84.

As such, the forcible strip search violated Plaintiff's Fourth Amendment rights

85.

Importantly, the unconstitutional strip search set in motion the chain of events which led to the unnecessary and excessive use of force applied against Plaintiff.

86.

Therefore, Defendants Vallejo, Malone, Phelps, and Proctor are liable to Plaintiff under the Fourth Amendment and 42 U.S.C. § 1983.

*Eighth Amendment Violations*

87.

Plaintiff re-alleges each and every aforementioned paragraph as if fully restated herein.

88.

Plaintiff was subject to cruel and unusual punishment at the hands of Camden County Corrections Officers, acting under the color of law with the authority of the Camden County Sheriff's Office.

89.

The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment.

90.

Additionally, prison correctional officers may be held directly liable under 42 U.S.C. § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence.

91.

Defendants Vallejo, Malone, Phelps unnecessarily and wantonly inflicted pain on Plaintiff when they employed use of force tactics against him in Room 103 of the Camden County jail.

92.

Following the use of force, Defendants Vallejo, Malone, Phelps denied Plaintiff medical care for his injuries.

93.

Additionally, Defendants Benjamin and Douglas failed or refused when to intervene when other Defendants violated Plaintiff's Eighth Amendment in their presence.

94.

The use of force against Plaintiff and denial of medical care violated internal Camden County Sheriff's Office policies and procedures.

95.

In the alternative, Defendant Sheriff Proctor failed to develop policies and procedures to protect Camden County jail inmates from cruel and unusual punishment.

96.

Therefore, Defendants Vallejo, Malone, Phelps, Benjamin, Douglas, and Proctor are liable to Plaintiff under the Eighth Amendment and 42 U.S.C. § 1983.

*Fourteenth Amendment*

97.

Plaintiff re-alleges each and every aforementioned paragraph as if fully restated herein.

98.

Plaintiff was denied due process at the hands of Camden County Corrections Officers, acting under the color of law with the authority of the Camden County Sheriff's Office.

99.

Objectively unreasonable force purposely or knowingly used against a pretrial detainee denies that pretrial detainee of due process.

100.

Prison officials step over the line of constitutionally permissible conduct if they use more force than is reasonably necessary in an existing situation.

101.

If the force is applied maliciously and sadistically to cause harm it is excessive under the Fourteenth Amendment.

102.

Defendants Vallejo, Malone, Phelps used more force than reasonably necessary in the existing situation with Plaintiff.

103.

Furthermore, Defendants Vallejo, Malone, Phelps applied that force maliciously and sadistically to cause harm.

104.

The use of force against Plaintiff violated internal Camden County Sheriff's Office policies and procedures.

105.

In the alternative, Defendant Sheriff Proctor failed to develop policies and procedures to protect Camden County jail inmates from due process violations.

106.

Therefore, Defendants Vallejo, Malone, Phelps, and Proctor are liable to Plaintiff under the Fourteenth Amendment and 42 U.S.C. § 1983.

*Punitive Damages*

107.

Plaintiff re-alleges each and every aforementioned paragraph as if fully restated herein.

108.

In their use of force tactics against Plaintiff, Defendants Vallejo, Malone, Phelps were recklessly and callously indifferent to the federally protected rights of others.

109.

Therefore, punitive damages are an appropriate against Defendants Vallejo, Malone, Phelps.

110.

Plaintiff re-alleges each and every aforementioned paragraph as if fully restated herein.

111.

The violation of Plaintiff's constitutional rights is highly significant and the litigation of the same accomplishes a public good.

112.

Plaintiff is entitled to recover his attorneys' fees in pursuit of this litigation under 42 U.S.C. Section 1988(b).

## CLAIMS UNDER O.C.G.A. § 16-14-1

113.

Plaintiff re-alleges each and every aforementioned paragraph as if fully restated herein.

114.

Following the various constitutional violations perpetrated against Mr. Drummond, the Sheriff's Office then engaged in a racketeering scheme to cover-up of evidence relating Mr. Drummond's beating.

115.

Defendant Hartfield coerced Mr. Drummond to make a false written statement that Mr. Drummond initiated the physical contact against Defendant Malone.

116.

Ranking officers within the Sheriff's Office, including Defendant Watson and Defendant Mastroianni, among others, directed or assisted in the destruction, burying, and/or alteration of documentary evidence relating to the events of January 24, 2021.

117.

Defendant Phelps was a willing and active participant in the in the alteration of original documentation relating to the use of force incident with Plaintiff.

118.

Defendants Vallejo and Malone were willing and passive participants in the destruction, burying, and/or alteration of documentary evidence relating to the events of January 24, 2021.

119.

Defendants Watson, Mastroianni, Phelps, Vallejo, and Malone therefore formed an enterprise to conduct, participate in, directly or indirectly, tamper with evidence in furtherance of protecting their own criminal and/or tortious behavior. Therefore, Defendants Watson, Mastroianni, Phelps, Vallejo, and Malone engaged in racketeering.

120.

Defendant Sheriff Proctor facilitated an internal Sheriff's Office culture which tolerated such racketeering and cover-up activities, and Defendant Sheriff Proctor failed to create and implement policies which would prevent conduct of this nature.

121.

Because Defendants Watson, Mastroianni, Phelps, Vallejo, Hatfield, and Malone were engaged in racketeering a cover-up of Plaintiff's incident and because Defendant Sheriff Proctor created a culture which permitted this type of conduct, they are liable to Plaintiff for treble damages, attorneys' fees, and punitive damages.

WHEREFORE, Plaintiff prays:

a) For general damages, including pain and suffering;

b) For all special damages, including medical and incidental expenses, and other consequential damages according to proof;

c) For treble damages pursuant to O.C.G.A. § 16-14-1;

d) For costs of suit herein incurred, including attorneys' fees;

e) For two counts of punitive damages;

f) For such other and further relief as the court may deem proper;

g) That Plaintiff have a trial by jury as to all issues so triable.

The 31st day of March 2021.

 /s/ *M. Waite Thomas*
M. Waite Thomas, Esq.
Georgia State Bar No. 617667
Attorney for Plaintiff
