IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | | |
|---|---|---|
| ADAM DRUMMOND, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | FILE NO.: 2:22-CV-00033-LGW-BWC |
| v. | ) | |
| | ) | |
| CAMDEN COUNTY SHERIFF JIM | ) | |
| PROCTOR, in his official capacity, | ) | |
| SHERIFF'S CORRECTIONS OFFICER | ) | |
| LARRY PHELPHS, in his official and | ) | |
| Personal capacity, SHERIFF'S | ) | |
| CORRECTIONS OFFICER CORPORAL | ) | |
| JORDAN MALONE, in his official and | ) | |
| Personal capacity, SHERIFF'S | ) | |
| CORRECTIONS SERGEANT LUIS | ) | |
| VALLEJO, in his official and personal | ) | |
| Capacity, SHERIFF'S DEPUTY MAJOR | ) | |
| ROB MASTROIANNI, SR., in his official | ) | |
| And personal capacity, SHERIFF'S | ) | |
| DEPUTY LIEUTENANT ERIC WATSON, | ) | |
| In his official and personal capacity, | ) | |
| SHERIFF'S CORRECTIONS OFFICER | ) | |
| RAKITA DOUGLAS, in her official and | ) | |
| Personal capacity, SHERIFF'S | ) | |
| CORRECTIONS OFFICER KENDALL | ) | |
| BENJAMIN, in her official and personal | ) | |
| Capacity, SHERIFF'S CORRECTIONS | ) | |
| OFFICER WILLIAM HATFIELD, in his | ) | |
| official and personal Capacity, and JOHN | ) | |
| AND JANE DOES 1-3, in their personal | ) | |
| and official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>DEFENDANTS CAMDEN COUNTY SHERIFF JIM PROCTOR, LARRY PHELPS, JORDAN MALONE, LUIS VALLEJO, ROB MASTROIANNI, ERIC WATSON, AND RAKITA DOUGLAS'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND INCORPORATED MEMORANDUM OF LAW</u>**

COME NOW defendants Camden County Sheriff Jim Proctor, Larry Phelps, Jordan

Malone, Luis Vallejo, Rob Mastroianni, Eric Watson, and Rakita Douglas, and file motion to

dismiss plaintiff Adam Drummond's complaint (Doc. 1) and incorporated memorandum of law, pursuant to Rule 12(b) and Local Rule 7.1, showing the Court as follows:[1]

## I.      INTRODUCTION AND STATEMENT OF FACTS

Plaintiff alleges he was improperly searched and subjected to excessive force while being admitted to the Camden County Jail after an arrest for DUI on January 24, 2021.

According to the complaint, Camden County jail officers received plaintiff for intake after he was arrested for DUI by the Kingsland Police Department. (Doc. 1, ¶21.) Upon entry into the facility, plaintiff refused to answer questions from the booking officer. (Id. ¶¶ 26-27.) Defendant Malone then decided to initiate a strip search of plaintiff. (Id. ¶ 31.) Defendants Vallejo and Phelps joined Malone in the intake area with plaintiff. (Id. ¶ 33.) The three went into "Room 103" where the strip searches are conducted. (Id. ¶ 34.) Plaintiff alleges defendants Phelps, Malone, and Vallejo "severely beat Plaintiff" while in Room 103. (Id. ¶ 38.) When plaintiff was taken out of Room 103, he was bleeding, and the officers placed him in a restraint chair. (Id. ¶¶ 40-43.) Plaintiff was seen by a nurse the next morning for his injuries. (Id. ¶ 46.)

Plaintiff alleges that "Defendants Benjamin and Douglas were [also on] shift during the early morning hours of January 24, 2021, they were capable of preventing or mitigating the injuries to Mr .Drummond, and they failed to act." (Id. ¶ 54.)

After posting bond, plaintiff alleges defendant Hartfield coerced him to make false statements regarding the physical altercation with the officers. (Id. ¶¶ 51-52.) Plaintiff alleges that Staff Sergeant Sikes believed Phelps, Vallejo, and Malone used excessive force against Plaintiff and violated internal policies. (Id. ¶ 59.) She presented her conclusions to defendant Watson, who agreed. (Id. ¶¶ 60-61.) Sikes then prepared write-ups for Vallejo, Malone, and

---

[1] This motion to dismiss is filed on behalf of all defendants except William Hatfield and Kendall Benjamin. On information and belief, these defendants have not been served.

Phelps, and presented these to her supervisors, defendants Watson and Mastroianni. (Id. ¶¶ 63-64.) Mastroianni ordered that no action be taken against Vallejo, Malone, and Phelps, and then, according to plaintiff, he destroyed the prepared write-ups and edited narratives in incident reports to "cover up" the improper use of force. (Id. ¶¶ 65-72.)

Plaintiff asserts the following claims against defendants:

- A violation of his Fourth Amendment rights predicated on the strip search, against defendants Vallejo, Malone, and Phelps in their official and individual capacities, and against Sheriff Proctor only in his official capacity. (Id. ¶¶ 77-86.)

- A violation of his Eight Amendment right against cruel and unusual punishment predicated on the excessive force and denial of medical care, against defendants Vallejo, Phelps, Malone, Benjamin[2], and Douglas in their official and individual capacities, and against Sheriff Proctor only in his official capacity. (Id. ¶¶ 87-96.)

- A violation of his Fourteenth Amendment rights predicated on the use of excessive force, against defendants Vallejo, Malone, and Phelps in their official and individual capacities, and against Sheriff Proctor only in his official capacity. (Id. ¶¶ 97-106.)

- A claim for punitive damages against defendants Vallejo, Phelps, and Malone, in their individual and official capacities. (Id. ¶¶ 107-109.)

- A claim for attorney's fees under 42 U.S.C. § 1988. (Id. ¶¶ 110-112.)

- A claim for racketeering pursuant to O.C.G.A § 16-14-1, predicated on the alleged "cover up," against defendants Watson, Mastroianni, Phelps, Vallejo, Hatfield[3], and Malone in

---

[2] Again, this motion is not filed on behalf of defendant Benjamin because, on information and belief, he has not yet been served.
[3] Again, this motion is not filed on behalf of defendant Hatfield because, on information and belief, he has not yet been served.

their individual and official capacities, and against Sheriff Proctor only in his official capacity. (Id. ¶¶ 113-121.)

As shown below, plaintiff fails to state a claim as to nearly all of his claims against these defendants. The only claim plaintiff has arguably pleaded with sufficient detail is the Fourteenth Amendment excessive force claim against defendants Phelps, Vallejo, and Malone in their individual capacities. Accordingly, these defendants file the instant motion to dismiss in order to narrow the issues and claims before the parties engage in discovery.

## II.    LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This requirement is intended to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). When the sufficiency of a complaint is challenged on a Rule 12(b)(6) motion to dismiss, the court considers whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

Rule 8(a)(2) demands more "than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint does not suffice if it tenders "naked assertions" devoid of further factual enhancement, or if it offers labels and conclusions or a formulaic recitation of the elements of a cause of action. Id. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.; see also Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1185 (11th Cir. 2003) ("[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal.").

### III.    ARGUMENT AND CITATION TO AUTHORITY

**A.    Plaintiff Fails to State Any § 1983 Claim Against Sheriff Proctor Or Defendants In Their Official Capacities.**

Plaintiffs' § 1983 claims against all defendants in their official capacities fail because plaintiff cannot bring a § 1983 action against an arm of the state and defendants in their official capacities are entitled to Eleventh Amendment immunity.

**1.    Plaintiff's official capacity claims are redundant to the claims against Sheriff Proctor in his official capacity.**

As an initial matter, while plaintiff's attempts to name Sheriff Proctor and each of the named deputies as separate defendants in their official capacities, any defendant in his or her official capacity is essentially the governmental entity he or she works for, and the claims are therefore redundant. Reid v. City of Alma, No. CV 511-092, 2013 U.S. Dist. LEXIS 30007, at *27 (S.D. Ga. Mar. 4, 2013) ("However, claims against both the employer and an employee in his official capacity are redundant and subject to dismissal."); see also Scruggs v. Lee, 256 F. App'x 229, 232 (11th Cir. 2007) (deputy in his official capacity entitled to same immunity as sheriff in his official capacity). Thus, the claims against the deputies in their official capacities are redundant to the claims against Sheriff Proctor in his official capacity. See Kentucky v. Graham, 473 U.S. 159, 165, 105 S. Ct. 3099, 3105 (1985) ("Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent."). According, this Court should dismiss the official-capacity claims against the various officers. In turn, plaintiff's official capacity claims against Sheriff Proctor fail for the reasons addressed below.

**2.   Plaintiff cannot bring § 1983 claims against an "arm of the state."**

A suit against a state official in his official capacity is the same as a suit against the state. Will v. Mich. Dept. of State Police, 491 U.S. 58, 64, 70-71 (1989). Neither a federal court nor a state court may entertain a § 1983 claim brought against a state or a state official sued in his official capacity because a state is not a person within the meaning of § 1983. Howlett v. Rose, 496 U.S. 356, 376 (1990). Specific to this case, a Georgia sheriff is an "arm of the state" and therefore is not subject to suit under § 1983. Molette v. Georgia, 469 F. App'x 766, 768 (11th Cir. 2012) (applying Will to affirm dismissal of plaintiff's official capacity § 1983 claim against sheriff's deputy); Bell v. Houston Cnty., No. 5:04-CV-390, 2006 WL 1804582, 2006 U.S. Dist. LEXIS 43387, at *37 (M.D. Ga. Jun. 27, 2006) (applying Will to dismiss plaintiff's official capacity § 1983 claim against a county sheriff). Accordingly, plaintiff's official capacity claims against Sheriff Proctor fail as a matter of law. [4]

**3.   Sheriff Proctor is entitled to Eleventh Amendment immunity.**

A state is immune from suit in federal court without its consent. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). This immunity extends to an "arm of the State," which includes agents and instrumentalities of the state. Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429-30 (1997). "Whether a defendant is an 'arm of the State' must be assessed in light

---

[4] This ground for dismissal is independent from Eleventh Amendment immunity. See Vt. Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 779, 120 S. Ct. 1858, 1866 (2000) (stating that "the question whether the statute itself permits the cause of action it creates to be asserted against States" is "'logically antecedent to the existence of' the Eleventh Amendment question," and thus, it is "indeed appropriate [ ] to decide the statutory issue first."); Arizonans for Official English v. Arizona, 520 U.S. 43, 69, 117 S. Ct. 1055, 1069-70 (1997) ("The barrier was not … Eleventh Amendment immunity, which the State could waive. The stopper was that § 1983 creates no remedy against a State."); Carr v. City of Florence, 916 F.2d 1521, 1521, 1525 n.3 (11th Cir. 1990) ("States and their officials no longer need to rely exclusively on eleventh amendment immunity to avoid liability in their official capacities in section 1983 cases.").

of the particular function in which the defendant was engaged." Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc).

Four factors determine whether an entity is an "arm of the state": "(1) how state law defines the entity; (2) what degree of control the state maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." Id. at 1309. As employees of a sheriff, sheriff's deputies in their official capacities are entitled to Eleventh Amendment immunity to the same extent as their sheriffs. See Scruggs v. Lee, 256 F. App'x 229, 232 (11th Cir. 2007).

In Boyd v. Nichols, a female inmate sued a sheriff in his official capacity, complaining that the sheriff's alleged policies of failing to train jailers, understaffing the jail, and allowing male jailers to handle female inmates without any supervision resulted in a male jailer sexually assaulting her. 616 F. Supp. 2d 1331, 1343 (M.D. Ga. 2009). The court observed that the "Eleventh Circuit specifically said in Manders that the sheriff's 'authority and duty to administer the jail in his jurisdiction flows from the State, not [the] County." Id. at 1344 (quoting Manders, 338 F.3d at 1315). The Court concluded that the sheriff, in his official capacity, was entitled to Eleventh Amendment immunity on plaintiff's claims that his administration of the jail caused a sexual assault against her. Id.; see also Purcell ex rel. Estate of Morgan v. Toombs Cnty., Ga., 400 F.3d 1313, 1326 (11th Cir. 2005) ("Sheriff Kight functions as an arm of the State—not Toombs County—when promulgating policies and procedures governing conditions of confinement at the Toombs County Jail.").

Plaintiff asserts multiple bases for his official capacity § 1983 claims: search procedures, excessive force, and inadequate medical care. As for the search claim, the Eleventh Circuit has already determined that a sheriff in his official capacity "is an 'arm of the State' entitled to

immunity in executing the function of establishing policies at the jail for processing arrestees." Scruggs, 256 F. App'x at 232. Likewise, Manders itself held that a sheriff in his official capacity is entitled to Eleventh Amendment immunity with respect to claims arising from the excessive use of force in the jail. Manders, 338 F.3d at 1308-09.

To undersigned counsel's knowledge, the Eleventh Circuit has not yet applied the Manders factors to claims arising from insufficient medical care. It has, though, applied these factors to determine whether sheriffs and deputies were acting as arms of the state when providing food to county inmates. Lake v. Skelton, 840 F.3d 1334 (11th Cir. 2016). In analyzing the first Manders factor, the Court recognized "that 'the essential governmental nature of [a sheriff's] office' includes 'perform[ing] specific statutory duties, directly assigned by the State, in law enforcement, in state courts, and in corrections." Id. at 1339 (quoting Manders, 338 F.3d at 1319). "The duty to take custody of inmates entails certain custodial responsibilities over the bodies of inmates.  For instance, it is 'the duty of the sheriff' to furnish 'medical aid, heat, and blankets, to be reimbursed if necessary from the county treasury." Id. at 1340-42 (quoting Manders, 338 F.3d at 1319) (O.C.G.A. § 42-4-4(a)(2)). The Eleventh Circuit equated those responsibilities to those imposed on sheriffs and deputies to provide food to inmates. O.C.G.A. §§ 42-4-32, 42-5-2. The Eleventh Circuit went on to stress that "because a deputy receives all of his powers and obligations with respect to feeding inmates from the sheriff . . . a deputy also wears a 'state hat' when he denies an inmate's dietary request." Lake, 840 F.3d at 1342.

With respect to the second and third Manders factors, the Eleventh Circuit in Lake found that because "State law regulates food preparation and food service in the jail", and because the "county is required to pay [for those services] by state law and the state provides some funding",

both factors weighed in favor of the function being classified as an act of an arm of the state. Id. at 1342-44.

The Eleventh Circuit concluded by recognizing that while a sheriff would likely be responsible for paying any adverse federal judgment, this fourth Manders factor was not dispositive. In so holding, the court stressed that "'an actual drain on the state treasury' is not required for immunity to apply under Manders." Id. at 1344 (citing Manders 338 F.3d at 1327). In sum, the Eleventh Circuit concluded that sheriffs and deputies alike were entitled to Eleventh Amendment immunity for the provision of food to inmates in county jails. Id.

Since Lake, district courts have discussed whether the same analysis should apply to the statutorily required provision of medical services to inmates. To undersigned counsel's knowledge and without deviation, all district courts in Georgia have recognized little to no distinction between the provision of food or that of medical services to inmates with respect to Eleventh Amendment immunity. As the Federal District Court for the Northern District of Georgia has acknowledged, while the pre-Lake authority may have allowed claims arising from inadequate medical care to survive Eleventh Amendment immunity, "the more recent authority, which draws parallels from the Eleventh Circuit's decision in Lake v. Skelton, 840 F.3d 1334 (11th Cir. 2016) holds that a sheriff acts as an arm of the State in providing medical care to jail detainees." Estate of May v. Fulton Cty., No. 1:19-CV-2440-SCJ, 2020 U.S. Dist. LEXIS 171784, at *15 (N.D. Ga. Aug. 13, 2020). Likewise, this Court has held that since Lake, "Georgia district courts (including this one) have found that the holding in Lake necessitates a holding that a sheriff *also* acts as an arm of the state in providing medical care to inmates." Bivens v. Coffee Cty., No. 5:21-CV-14, 2021 U.S. Dist. LEXIS 138835, at *11 (S.D. Ga. July 26, 2021) (collecting cases). Virtually all courts that have addressed the question since Lake have

held that by providing medical services or assistance to inmates, deputies and sheriffs are acting as an arm of the state and are entitled to Eleventh Amendment immunity.[5] Given that plaintiffs admit that all named defendants in this pending action were acting within their official capacities as sheriffs and deputies of Cobb County on the days in question, and given that they were in the process of providing medical services to Mr. Wingo, all named defendants should be entitled to Eleventh Amendment immunity on the federal law claims as to their official capacities.

Taking the Eleventh Amendment immunity as valid and effective, "this Court lacks jurisdiction to entertain plaintiffs' § 1983 claims against" the named Sheriff and deputy defendants. Estate of May, 2020 U.S. Dist. LEXIS 171784, at *17. "Because the Eleventh Amendment represents a constitutional limitation on the federal judicial power established in Article III, federal courts lack jurisdiction to entertain claims that are barred by the Eleventh Amendment." McClendon v. Ga. Dep't of Cmty. Health, 261 F. 3d, 1252, 1256 (11th Cir. 2001).

For these reasons, this Court should dismiss all federal claims against defendants in their official capacities.

---

[5] See e.g., Iraheta v. Hous. Cty., No. 5:21-cv-00104-TES, 2022 U.S. Dist. LEXIS 11950, at *11 (M.D. Ga. Jan. 24, 2022); Kinsey v. Thomas, No. 3:20-CV-43 (CDL), 2021 U.S. Dist. LEXIS 136989, at *11 n.4 (M.D. Ga. July 22, 2021); Estate of May, 2020 U.S. Dist. LEXIS 171784, at *15. Jenkins v. Corizon Health Inc., No. CV418-099, 2020 U.S. Dist. LEXIS 165912, at *18-19 (S.D. Ga. Sep. 10, 2020); McRae v. Telfair Cnty., No. CV 318-077, 2020 U.S. Dist. LEXIS 171627 at *5-6 (S.D. Ga. Sept. 18, 2020); Mizelle v. Wellpath LLC, No. CV 119-198, 2020 U.S. Dist. LEXIS 123802 at *2 (S.D. Ga. July 14, 2020); Raven v. Jackson, No. 5:19-CV-161 (TES), 2021 U.S. Dist. LEXIS 66970 at *6 (M.D. Ga. Feb. 2, 2021), report and recommendation adopted sub nom. Raven v. Talton, 2021 U.S. Dist. LEXIS 67001 at *6 (M.D. Ga. Feb. 25, 2021); Johnson v. Columbus Consol. Gov't, No. 4:19-CV-119 (CDL), 2020 U.S. Dist. LEXIS 111387 at *2 (M.D. Ga. June 25, 2020); Fincher v. Monroe Cnty. Bd. of Comm'rs, No. 5:18-CV-00424-TES, 2020 U.S. Dist. LEXIS 55041 at *13-14 (M.D. Ga. Mar. 30, 2020); Nesbitt v. Long, No. 519CV00067MTTCHW, 2019 U.S. Dist. LEXIS 225893 at *2 (M.D. Ga. Nov. 5, 2019), report and recommendation adopted, No. 5:19-CV-67 (MTT), 2020 U.S. Dist. LEXIS 13567 (M.D. Ga. Jan. 28, 2020); Brooks v. Wilkinson Cnty., 393 F. Supp. 3d 1147, 1160 (M.D. Ga. 2019); Palmer v. Correct Care Sols., LLC, 291 F. Supp. 3d 1357, 1362 (M.D. Ga. 2017).

**B.      Plaintiff Fails to State a Violation of His Fourth Amendment Rights.**

Plaintiff alleges that officers Vallejo, Malone, and Phelps violated plaintiff's Fourth Amendment rights when they allegedly subjected plaintiff to a strip search without probable cause to believe he posed a threat and with the door open to the room where the search occurred, such that a female officer could see the search as it was occurring. (Doc. 1, ¶¶ 80-81.) Plaintiff also alleges that the search violated the internal policies of the Camden County Sheriff's Office. (Id. ¶ 82.)

These defendants in their official capacities are entitled to Eleventh Amendment immunity on plaintiff's Fourth Amendment claim. (See Part III.A *supra*.)

In their individual capacities, defendants Vallejo, Malone, and Phelps are entitled to qualified immunity on this claim because they did not violate plaintiff's clearly established constitutional rights. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Only in exceptional cases will government actors have no shield against claims made against them in their individual capacities. Id. "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (citations and punctuation omitted).

Vallejo, Malone, and Phelps are eligible to claim qualified immunity because plaintiff alleges that they acted within the scope and authority of their official employment. (Doc. 1, ¶ 12.); Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004). In order to overcome qualified immunity, plaintiff must show that defendants' *specific conduct* violated a *clearly established* statutory or constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). To meet this burden, plaintiff must show that (1) defendant engaged in conduct that violated Furcron's rights under the Fourteenth Amendment; and (2) defendant's conduct was prohibited

by clearly established law. See Plumhoff v. Rickard, 134 S. Ct. 2012, 2020 (2014). In evaluating whether plaintiff has met his burden, the Court may exercise its discretion in determining which step of the analysis it should first address. Id.

      **1.**      **No constitutional violation**

The Eleventh Circuit has already considered and rejected plaintiff's contention that it violates his Fourth Amendment rights to be strip searched without reasonable suspicion or probable cause upon being admitted into a jail. In Powell v. Barrett, the plaintiffs contended that their strip searches upon being admitted to the Fulton County Jail violated the Fourth Amendment "because there was no reasonable suspicion to believe that any of them had hidden contraband." Powell v. Barrett, 541 F.3d 1298, 1301 (11th Cir. 2008). After a lengthy review of the penological justification for strip searches of all inmates upon admission to a jail facility—whether on felony or misdemeanor charges—the Eleventh Circuit concluded: "assuming that arrestees being booked into a jail or detention facility retain some Fourth Amendment rights . . . those rights are not violated by a policy or practice of strip searching each one of them as part of the booking process, provided that the searches are no more intrusive on privacy interests than those upheld in the Bell case." Id. at 1314. For its part, the Supreme Court in Bell permitted a policy of routine visual body cavity inspections for all inmates whenever they had had contact with a person outside the facility. Bell v. Wolfish, 441 U.S. 520, 558 (1979).

Indeed, "[n]umerous cases illustrate that strip searches at points of transition are commonplace, and are an essential means of preventing prisoners from possessing contraband." Rodriguez v. White, No. 5:15-cv-290-MTT-CHW, 2017 U.S. Dist. LEXIS 217412, at *21 (M.D. Ga. July 27, 2017) (report and recommendation adopted with respect to strip searches, Rodriguez v. White, No. 5:15-CV-290 (MTT), 2018 U.S. Dist. LEXIS 21438, at *8 (M.D. Ga. Feb. 9,

2018)). Courts have also found that "strip searches carried out in non-secluded areas of the prison and in the presence of prison employees of the opposite sex are not unconstitutional." Hanners v. Humphries, No. 5:12-CV-245-MTT-CHW, 2012 U.S. Dist. LEXIS 156456, at *4 (M.D. Ga. Nov. 1, 2012). Accordingly, plaintiff's allegation that he was strip searched without probable cause and within sight of a female officer fail to state a claim for a Fourth Amendment violation.

Perhaps acknowledging that being strip searched in the manner alleged does not violate plaintiff's constitutional rights, plaintiff also claims that the search violated the jail's internal policies. But as this Court has recognized, "Section 1983 only provides a remedy for violations of federal statutes or the federal Constitution, not of internal policies. A violation of a jail's rules, regulations, and/or policies, without more, does not give rise to a federal constitutional violation." Davis v. Pope, No. CV 511-105, 2013 U.S. Dist. LEXIS 106652, at *21-22 (S.D. Ga. July 30, 2013).

Accordingly, plaintiff has failed to allege that these defendants violated his constitutional rights, these defendants are thus entitled to the defense of qualified immunity.

### 2.    No violation of clearly established law

Even assuming plaintiff could allege that defendants Vallejo, Phelps, and Malone violated plaintiff's constitutional rights under the Fourth Amendment, he cannot meet his burden of proving that defendants violated *clearly established* law. To meet his burden, plaintiff must show that the law was "clearly established" at the time of defendants' supposed misconduct. See Terrell v. Smith, 668 F.3d 1244, 1250 (11th Cir. 2012).

To determine whether the law was clearly established, "[c]ase law must ordinarily have been earlier developed in such a concrete and factually defined context to make it obvious to all

reasonable government actors, in the defendant's place, that what he is doing violates federal law." Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 926 (11th Cir. 2000). Put otherwise, "[q]ualified immunity affords protection to all but the plainly incompetent or those who knowingly violate the law." Bates v. Harvey, 518 F.3d 1233, 1242 (11th Cir. 2008). Thus, if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." Coffin v. Brandau, 642 F.3d 999, 1015 (11th Cir. 2011) (citations and punctuation omitted). In all cases where qualified immunity is at issue, courts must determine whether the law was clearly established by looking at whether the state of the law at the time of the action gave "fair and clear warning" to a reasonable person that their actions were unconstitutional. Hope v. Pelzer, 536 U.S. 730, 746 (2002); see also United States v. Lanier, 520 U.S. 259, 265 (1997) ("To make the warning fair, so far as possible the line should be clear."). In this circuit, the law can be clearly established for qualified immunity purposes only by decisions of the United States Supreme Court, the Eleventh Circuit Court of Appeals, or the Georgia Supreme Court. Jenkins v. Talladega City Bd. of Educ., 115 F.3d 821, 823 n.4 (11th Cir. 1997).

Moreover, obvious clarity cases are rare and involve conduct "far beyond the hazy border between excessive and acceptable force." Priester, 208 F.3d at 927. Additionally, "because this standard establishes no bright line, qualified immunity applies unless application of the standard would inevitably lead every reasonable officer . . . to conclude the force was unlawful." Post v. City of Fort Lauderdale, 7 F.3d 1552, 1559 (11th Cir. 1993), modified on other grounds, 14 F.3d 583 (11th Cir. 1994); see also Carroll v. Carman, 135 S. Ct. 348, 350 (2014) (quoting Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083 (2011) (for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate")).

Qualified immunity "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." <u>Malley v. Briggs</u>, 475 U.S. 335, 341, 343 (1986). Thus, even if defendant was mistaken in believing that his actions were justified, he was not "plainly incompetent." <u>See</u> <u>Stanton v. Sims</u>, 134 S. Ct. 3, 7 (2013); <u>Brinegar v. United States</u>, 338 U.S. 160, 175 (1949) (stating that law enforcement officers are "prudent men, not legal technicians").

Here, plaintiff cannot overcome defendants' sovereign immunity defense on his search claim without pointing to some prior case law that clearly establishes that the strip search, under the circumstances as alleged, would violate his constitutional rights. As shown above, a routine strip-search of all inmates upon intake *does not* violate the Constitution, and the mere possibility that an officer of the opposite sex may have seen the search alone does not change this fact. <u>See</u> <u>Bell</u>, 441 U.S. at 558; <u>Hanners</u>, 2012 U.S. Dist. LEXIS 156456, at *4. Accordingly, plaintiff's unlawful search claim is due to be dismissed.

**C.      Plaintiff Fails to State a Violation of His Eighth Amendment Rights.**

Plaintiff claims that some of the named defendants violated his rights guaranteed by the Eighth Amendment. The Eighth Amendment's protection against cruel and unusual punishment applies only to convicted prisoners. U.S. Const. Amend. VIII; <u>Goodman v. Kimbrough</u>, 718 F.3d 1325, 1331 n.1 (11th Cir. 2013). "It is beyond cavil that the Eighth Amendment applies only after a prisoner is convicted." <u>United States v. Myers</u>, 972 F.2d 1566, 1571 (11th Cir. 1992). Plaintiff does not allege that he was a convicted prisoner and, accordingly, plaintiff is not protected by the Eighth Amendment. Plaintiff has thus failed to state a claim under the Eighth Amendment, and this claim against all defendants must be dismissed.

**D.      Plaintiff Fails to State a Violation of His Fourteenth Amendment Rights Against Any Defendant in Their Official Capacity.**

Plaintiff brings a § 1983 Fourteenth Amendment claim against defendants Vallejo, Malone, and Phelps in their individual and official capacities, and against defendant Proctor in his official capacity. (Doc. 1, ¶¶ 97-106.) This Fourteenth Amendment claim is premised on defendants' use of force against plaintiff.

As discussed in Part III.A *supra*, all of the official capacity claims fail because (1) the claims against the officers in their official capacities are redundant to the claims against Sheriff Proctor in his official capacity; (2) plaintiff cannot maintain a § 1983 claim against Sheriff Proctor as an arm of the state, and (3) Sheriff Proctor in his official capacity is entitled to Eleventh Amendment immunity.

Accordingly, the Court should dismiss plaintiff's § 1983 Fourteenth Amendment claim against defendants in their official capacities. At this time, defendants do not move to dismiss the Fourteenth Amendment claim defendants Vallejo, Malone, and Phelps in their individual capacities. Defendants will address this claim in a subsequent dispositive motion.

**E.      Plaintiff Fails to State a Racketeering Claim Under O.C.G.A. § 16-14-4.**

Plaintiff's only state-law claim against defendants is a racketeering claim arising from an alleged "cover-up of evidence relating [to] Mr. Drummond's beating." (Doc. 1, ¶ 114.) Plaintiff alleges the cover-up consisted of defendant Hatfield compelling him to write a false statement (id. ¶ 115); defendants Watson and Mastroianni's alleged "destruction, burying, and/or alteration of documentary evidence" (id. ¶ 116); defendant Phelps's "willing and active participa[tion]" in such alteration (id. ¶ 117); and defendants Vallejo and Malone's "willing and passive participa[tion]" in the alteration (id. ¶ 118). Plaintiff also alleges that Sheriff Proctor failed to implement policies to prevent such racketeering. (Id. ¶ 120.) The only "evidence"

plaintiff claims was actually destroyed were draft "write-ups" prepared by officer Sikes and the "original version" of a narrative in an incident report. (Id. ¶¶ 63, 72.) Plaintiff's RICO claim should be dismissed as to all defendants because plaintiff fails to state a claim for such violation.

### 1. Plaintiff fails to state a RICO claim against defendants in their official capacities.

As shown above, plaintiff cannot maintain a RICO claim against Sheriff Proctor or his officers in their official capacities because they are entitled to Eleventh Amendment immunity. "As a matter of law, state agencies cannot, alone or through their agents, form the requisite state of mind necessary to sustain a RICO claim. . . . Further, any such claims are likely barred by the Eleventh Amendment." Auburn Med. Ctr. v. Peters, 953 F. Supp. 1518, 1522 (M.D. Ala. 1996). Accordingly, the Court should dismiss the RICO claims against defendants in their official capacities.

### 2. Plaintiff fails to state a RCO claim against defendants in their individual capacities.

Under Georgia's RICO statute, O.C.G.A. § 16-14-1 et seq., "[i]t is unlawful for any person, through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money."  O.C.G.A. § 16-14-4(a). "The Georgia RICO statute was modeled after the federal RICO statute and contains similar language for a similar purpose." Murphy v. Farmer, 176 F. Supp. 3d 1325, 1346 (N.D. Ga. 2016). "Consequently, federal courts have applied the same analysis to state RICO claims as to federal claims." Club Car, Inc. v. Club Car (Quebec) Import, Inc., 276 F. Supp. 2d 1276, 1282-83 (S.D. Ga. 2003).

To state a claim under Georgia's RICO statute, "[p]laintiff[] must plausibly allege that [defendants] engaged in a pattern of racketeering activity, meaning that [they] 'committed

predicate offenses . . . at least twice.'" <u>Wade Park Land Holdings, LLC v. Kalikow</u>, 522 F. Supp. 3d 1341, 1355 (N.D. Ga. 2021). Georgia's predicate offenses are listed in O.C.G.A. § 16-14-3(5). Importantly, the Georgia General Assembly enacted its RICO statute "to impose sanctions against [the] subversion of the economy by organized criminal elements and to provide compensation to private persons injured thereby. It is not the intent of the General Assembly that isolated incidents of misdemeanor conduct be prosecuted under this chapter but only an interrelated pattern of criminal activity, *the motive or effect of which is to derive pecuniary gain*. This chapter shall be construed to further that intent." O.C.G.A. § 16-14-2(a) (emphasis added). Accordingly, under Georgia law, "it is clear that RICO applies to a pattern of criminal activity where it is directed towards acquiring or maintaining something of pecuniary value. Mere evidence that a person's criminal conduct constitutes a pattern of racketeering activity is insufficient . . ." <u>Sevcech v. Ingles Mkts.</u>, 222 Ga. App. 221, 222, 474 S.E.2d 4, 7 (1996). Furthermore, "[t]o establish a valid civil RICO claim, a plaintiff must show that the defendant violated or conspired to violate Georgia's RICO Act and that the RICO violation proximately caused injury to the plaintiff." <u>Najarian Capital, LLC v. Clark</u>, 357 Ga. App. 685, 693, 849 S.E.2d 262, 270 (2020).

Here, plaintiff has failed to state a racketeering claim because his complaint allegations fail to satisfy several of the elements for a civil RICO claim under Georgia law. First, plaintiff has not alleged what, if any, actions alleged in the complaint constitute the requisite predicate offenses to state a racketeering claim—much less that there were at least two predicate acts. While plaintiff generally alleges that there was some sort of "cover up," he does not allege how this "cover up" included at least two separate enumerated violations under Georgia's RICO statute. Accordingly, plaintiff's racketeering claim is due to be dismissed for failure to allege a

continuing pattern of predicate crimes, or even *the existence* of predicate crimes, as required to establish a RICO violation.

Second, plaintiff does not allege that any defendant derived or sought pecuniary gain by the alleged predicate acts. At best, plaintiff alleges that the defendants edited reports to portray plaintiff's treatment in a better light and to avoid internal discipline. Plaintiff does not allege that defendants "derived pecuniary gain" from their acts, which is what the General Assembly intended to prevent in enacting the state's RICO statute. See O.C.G.A. § 16-14-2(a).

Third, plaintiff does not allege that the purported alteration of report narratives or destruction of draft disciplinary write-ups caused him any injury. Indeed, plaintiff claims the alleged alteration and destruction occurred in February 2021, after plaintiff had already been released from jail. (Doc. 1, ¶ 63.) Plaintiff does not allege that the purported alteration or destruction caused him any injury.

Finally, as to defendants Vallejo and Malone, plaintiff simply alleges that they "were willing and passive participants in the destruction, burying, and/or alteration of documentary evidence relating to the events of January 24, 2021." (Doc. 1, ¶ 118.) This is just another way of saying that defendants Vallejo and Malone *did not* destroy, bury, or alter evidence. It is hard to conceive how "passive participation," i.e., *not active* participation, amounts to "a pattern of racketeering *activity*." See O.C.G.A. § 16-14-4(a). Plaintiff fails to state a racketeering claim against Vallejo and Malone for this additional reason.

In sum, plaintiff fails to state a claim for racketeering for failure to allege a pattern of predicate acts with the goal of pecuniary gain that injured plaintiff. For these reasons, plaintiff's racketeering claim is due to be dismissed.

## IV.    CONCLUSION

For the reasons addressed above, plaintiff has failed to state a claim for violation of his Fourth or Eighth Amendment rights pursuant to 42 U.S.C. § 1983, or for racketeering under Georgia law, against any defendant. Furthermore, all of his claims against Sheriff Proctor or any defendant in his or her official capacity are barred by Eleventh Amendment and sovereign immunity. The only claim that should remain against these defendants is the Fourteenth Amendment excessive force claim against defendants Malone, Phelps, and Vallejo in their individual capacities. Defendants intend to address these claims in a subsequent dispositive motion.

Respectfully submitted this 27th day of May, 2022.

**FREEMAN MATHIS & GARY, LLP**


*/s/ Wesley C. Jackson*
Sun S. Choy
Georgia Bar No. 025148
schoy@fmglaw.com
Wesley C. Jackson
Georgia Bar No. 336891
wjackson@fmglaw.com
Grace B. Callanan
Georgia Bar No. 909597
Gace.callanan@fmglaw.com

*Attorneys for defendants*

100 Galleria Parkway
Suite 1600
Atlanta, GA  30339-5948
(770) 818-0000 (Telephone)
(770) 937-9960 (Facsimile)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day electronically submitted the foregoing

<u>DEFENDANTS CAMDEN COUNTY SHERIFF JIM PROCTOR, LARRY PHELPS,</u>

<u>JORDAN MALONE, LUIS VALLEJO, ROB MASTROIANNI, ERIC WATSON, AND</u>

<u>RAKITA DOUGLAS'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND</u>

<u>INCORPORATED MEMORANDUM OF LAW</u> to the Clerk of Court using the CM/ECF

system which will automatically send electronic mail notification of such filing to counsel of

record who are CM/ECF participants.  Counsel of record are:

M. Waite Thomas
300 Oak Street
St. Simons Island, Georgia 31522

This 27th day of May, 2022.

*/s/ Wesley C. Jackson*
Wesley C. Jackson
Georgia Bar No. 336891
wjackson@fmglaw.com

FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway
 Suite 1600
Atlanta, Georgia 30339-5948
T:  (770) 818-0000
F:  (770) 937-9960