EXHIBIT

A
_____

exhibitsticker.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

|  |  |  |
|---|---|---|
| ADAM DRUMMOND, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CAMDEN COUNTY SHERIFF JIM | ) | |
| PROCTOR, in his personal capacity, | ) | |
| SHERIFF'S CORRECTIONS OFFICER | ) | |
| LARRY PHELPS, in his personal | ) | |
| capacity, SHERIFF'S CORRECTIONS | ) | |
| OFFICER CORPORAL JORDAN | ) | Civil Action File No. 2:22-CV-00033-LGW-BWC |
| MALONE, in his personal capacity, | ) | |
| SHERIFF'S CORRECTIONS | ) | |
| SERGEANT LUIS VALLEJO, in his | ) | |
| personal capacity, SHERIFF'S DEPUTY | ) | |
| MAJOR ROB MASTROIANNI, SR., in | ) | |
| his personal capacity, SHERIFF'S | ) | |
| DEPUTY LIEUTENANT ERIC | ) | |
| WATSON,  in his personal capacity, | ) | |
| SHERIFF'S CORRECTIONS OFFICER | ) | |
| RAKITA DOUGLAS, in her personal | ) | |
| capacity, SHERIFF'S CORRECTIONS | ) | |
| OFFICER KENDALL BENJAMIN, in | ) | |
| her personal capacity,  SHERIFF'S | ) | |
| CORRECTIONS OFFICER WILLIAM | ) | |
| HATFIELD, in his personal capacity. | ) | |
| Defendants. | ) | |

## SECOND AMENDED COMPLAINT

COMES NOW the Plaintiff, ADAM DRUMMOND, in the above captioned action, by and

through his undersigned counsel of record, pursuant to the Federal Rule of Civil Procedure 15, and

files this Second Amended Complaint and request for damages and respectfully shows the Court

the following:

## JURISDICTION AND VENUE

1.

Plaintiff is a resident of Youngstown, Ohio and submits himself to the jurisdiction and venue of this Court.

2.

Defendant Camden County Sheriff Jim Proctor is, and at all times herein mentioned, the Sheriff of Camden County, Georgia, and may be served at the Camden County Sheriff's Office, 209 E 4th Street, Woodbine, Georgia 31569.

3.

Defendant Phelps is, and at all times herein mentioned, a resident of Camden County, Georgia, who may be served at his last known address, 41 Garys Place, Kingsland, Georgia 31548.

4.

Defendant Malone is, and at all times herein mentioned, a resident of Duval County, Florida, who may be served at his last known address, 363 Sanwick Drive, Jacksonville, Florida 32218.

5.

Defendant Benjamin is, and at all times herein mentioned, a resident of Camden County, Georgia, who may be served at his last known address, 240 Herring Road, Woodbine, Georgia 31569.

6.

Defendant Douglas is, and at all times herein mentioned, a resident of Glynn County, Georgia, who may be served at his last known address, 2201 Whispering Oaks Drive, Brunswick, Georgia 31520.

7.

Defendant Vallejo is, and at all times herein mentioned, a resident of Camden County, Georgia, who may be served at his last known address, 114 Magnolia Court Kingsland, GA 31548

8.

Defendant Mastroianni is, and at all times herein mentioned, a resident of Camden County, Georgia, who may be served at his last known address, 234 Wood Duck Dr, Woodbine, GA 31569.

9.

Defendant Watson is, and at all times herein mentioned, a resident of Camden County, Georgia, who may be served at his last known address, 116 Overlook Bend Kingsland, GA 31548."

10.

Defendant Hatfield is, and at all times herein mentioned, a resident of Nassau County, Florida, who may be served at his last known address, 86156 Shady Oak Drive, Yulee, Florida 32097."

11.

At all times herein mentioned, each of the individual defendants was the agent and employee of the Defendant Camden County Sheriff Jim Proctor and was, at least in part, acting within the purpose and scope of such agency and employment.

12.

This action is based upon the tortious acts and/or omissions committed by Defendants within the confines of Camden County, Georgia.

13.

By virtue of the facts contained herein, this Court has jurisdiction and venue of the parties.

## **INTRODUCTION**

14.

This action is based an excessive and unwarranted beating Plaintiff endured at the hands of Camden County Sheriff's Corrections Officers and the subsequent efforts to cover up the wrongdoing.

15.

Pictured below are several of Plaintiff's initial injuries resulting from the Camden County Sheriff's Officer's use of force:

 

 

16.

As a result of the use of force, Plaintiff suffers from a traumatic brain injury ("TBI") and has been living with the long-term effects of that injury.

17.

After the Corrections Officers employed the use of force against Plaintiff, multiple other Corrections Officers engaged in a pattern and practice of illegal activity in covering up the crimes and torts of their fellow officers.

**FACTS**

18.

Up until the Fall of 2021, Plaintiff was a resident of Camden County, Georgia, and he had gainful employment with the City of Kingsland, Georgia.

*The Strip Search, Use of Force, and Denial of Care*

19.

At or around 1:00 am on January 24, 2021, the Camden County jail officers received "intake" prisoner Plaintiff Adam Drummond, who the Kingsland Police Department arrested for driving under the influence of alcohol ("DUI").

20.

The Kingsland PD dropped Plaintiff off at the Jail through the "Sally Port" area, which is a covered entryway designed for prisoner drop-offs.

21.

Defendant Corrections Officer Phelps and other Corrections Officers received Plaintiff from the patrol car and escorted him from the Sally Port to the Intake Area of the jail.

22.

Upon entering the jail, Plaintiff was pat searched.

23.

No contraband was found on him.

24.

Corrections Officer Laurie Brooks was waiting in the Intake Area to get information from Plaintiff to process or "book" him, including medical information for the completion questionnaire.

25.

Plaintiff did not want to answer Officer Brooks' questions.

26.

However, Plaintiff was not aggressive or combative in any way.

27.

Difficulty in the intake process is common for DUI cases and, without physical provocation, is not cause for any escalation.

28.

While Defendant Phelps and Officer Brooks were booking Plaintiff in the Intake Area, Defendant Corrections Officer Malone arrived at the Intake Area from the Jail's Main Control Room.

29.

Defendant Malone immediately started escalating the situation with Plaintiff, and Defendant Malone decided to conduct strip search him of Plaintiff.

30.

Plaintiff did not demonstrate any behavior that would indicate that he possessed contraband, and he had no history of possession contraband or drugs.

31.

Officer Brooks left the Intake Area and went to the Main Control Room, at which time Defendant Corrections Officer Vallejo joined Defendant Phelps and Defendant Malone in the Intake Area.

32.

Shortly after Officer Brooks left the Intake Area, Defendants Phelps, Malone, and Vallejo escorted Mr. Drummond to "Room 103," the area of the Jail where strip searches were conducted.

33.

There are no cameras in Room 103.

34.

At all times while in Room 103, Plaintiff was facing away from the three Defendants.

35.

Plaintiff remained non-aggressive.

36.

Within several minutes of the three officers and Mr. Drummond entering Room 103, the Defendants severely beat Plaintiff, as pictured *supra*.

37.

The Defendants beat him in the head and face, as well as shoulders and torso.

38.

Following the incident, Mr. Drummond's blood pooled on the floor.

39.

There was so much blood that it could not just be wiped up with towels; the whole floor of Room 103 had to be mopped.

40.

The officers then dragged Plaintiff out of Room 103 and restrained him in the Pro Restraint Chair.

41.

From audio saved of the minutes after the incident, Plaintiff can be heard immediately and consistently denying touching or using any application of force toward the officers while in Room 103.

42.

While in the Pro Restraint Chair, Plaintiff continued to bleed from the gashes to this head and face.

43.

Plaintiff's arms and legs were strapped to the chair, and he began pleading for medical attention. His face and head began swelling, and he started getting an extreme headache.

44.

Rather than call an ambulance or a nurse, Defendant Malone told Plaintiff that he was "fine," and Defendant Phelps wiped blood from his face and applied an ACE wrap to the open wound on Plaintiff's head.

45.

Plaintiff was not seen by a medical professional of any kind until the following morning, when he was taken to the jail nurse.

46.

Corrections Officers escorted Plaintiff into the medical examination room and refused to leave.

47.

Mr. Drummond complained of a severe headache, light sensitivity, and nausea.

48.

The Corrections Officers told the nurse he was "faking."

49.

After seeing the nurse, Plaintiff was able to post bond.

50.

During the outtake process, Defendant Hartfield coerced Mr. Drummond to make a false written statement that Plaintiff initiated the physical contact against the officers.

51.

Defendant Hartfield threatened Plaintiff with additional charges and a revocation of his bond if he did not write what he was told to say.

52.

Only after he wrote this false statement did the Sheriff's Office release Mr. Drummond from jail.

53.

Defendants Benjamin and Douglas were on shift during the early morning hours of January 24, 2021, they could prevent or mitigate the injuries to Mr. Drummond, but they failed to act.

*The Cover-Up*

54.

On January 25, 2021, Corrections Officer Staff Sergeant Jennie Sikes became aware that Defendants Phelps, Vallejo, and Malone implemented use of force tactics against Plaintiff, while he was an inmate the previous morning.

55.

In her role as Staff Sergeant, Officer Sikes was responsible for the implementation of correct policy amongst the Jail Officers, and where necessary, to investigate and recommend discipline for violations of policy.

56.

In this case, upon discovery of the use of force incident with Plaintiff, Officer Sikes investigated the incident, including saving all the necessary video and audio of the incident.

57.

Officer Sikes also obtained Defendant Phelps and Defendant Vallejo signed, original versions of the incident report narratives, which they authored on January 24, 2021.

58.

From her review of the incident, Sikes believed that the "use of force" was unnecessary and excessive, and she determined that Defendants Vallejo, Malone, and Phelps violated multiple internal policies.

59.

Officer Sikes presented her conclusions to Defendant Watson.

60.

Defendant Watson agreed with Officer Sikes conclusions, and on January 28, 2021, Watson counseled Defendant Phelps, Vallejo, and Malone regarding the violations.

61.

Following the counseling, Defendant Watson advised Officer Sikes to move forward with preparing write-ups for each Defendants Phelps, Vallejo, and Malone.

62.

Following orders, Officer Sikes physically wrote Defendants Vallejo, Malone, and Phelps up on February 1, 2021. Specifically, she wrote up Defendants Vallejo, Malone, and Phelps for (1) conduct unbecoming of an officer, (2) failure to follow Strip Search Policy No. 3-2 (failure to establish probable cause for Mr. Drummond's strip search), (3) failure of the "the duty to know", Policy No. 1-2, (4) failure to comply with duty of personal bearing and attention to duty, Policy No. 1-6, (5) dereliction of duty, Policy No. 1-5, (6) failure to observe and give effect to the policies of the office, (7) failure to obey or willful violation of any rule, regulation, or policy of the office, and (8) unnecessary violence toward any person.

63.

Officer Sikes then presented the incident investigation and write-ups to her supervisors, Defendants Watson and Mastroianni.

64.

Defendant Watson thereafter spoke to Defendant Mastroianni regarding the incident and the Defendants Vallejo, Malone, and Phelps' conduct, and Defendant Mastroianni ordered that no action be taken against the Defendants Vallejo, Malone, and Phelps.

65.

Defendant Mastroianni later stated to Officer Sikes that Defendants Vallejo, Malone, and Phelps would not receive punishment because "punishing them would mean we are admitting to doing wrong," or something along those lines.

66.

All documentation regarding the write-ups was then destroyed, altered, or hidden.

67.

Defendants Vallejo, Malone, and Phelps assisted in the destruction, alteration, and hiding of the write-ups, in order to further their careers and future financial opportunities.

68.

Following his decision to cover-up the improper use of force, Defendant Mastroianni then reviewed the remainder of the incident file to protect himself, the office, and the other officers.

69.

Defendant Mastroianni was motivated to cover-up the incident to protect his career, including rank promotions and financial salary raises, and avoid civil liability to Mr. Drummond.

70.

Because of those motivations, Defendant Mastroianni marked through the original narratives contained in the incident, edited certain language, and deleted certain language, and Defendant Mastroianni advised Defendant Phelps to implement his changes.

71.

Defendant Phelps complied and edited the original narratives.

72.

However, neither Defendant Phelps nor Defendant Vallejo signed the edited version.

73.

The original version was then destroyed or hidden, as it was not included in Camden County Sheriff's Office's response to an Open Records Request sent to the Camden Sheriff's Office in February of 2021.

*Damages*

74.

As a result of his injuries, Plaintiff sought medical treatment.

75.

Plaintiff currently has twenty-two thousand six hundred and six dollars and seven cents ($22,606.07) in medical bills.

76.

Plaintiff was also diagnosed with a traumatic brain injury (TBI) as a result of the head injury he received from Defendants Vallejo, Malone, and Phelps.

77.

From the TBI Plaintiff is having difficulty at work, he is unable to socialize, he has severe tinnitus, he has had an onset of debilitating anxiety and has had trouble sleeping.

78.

Additionally, given that Defendants were willing to coerce a false statement from him and destroy documents, Plaintiff suffers from emotional distress, including severe paranoia, fear of retribution, and nightmares. This only compounds with the complications from Plaintiff's TBI symptoms.

## CLAIMS UNDER 42 U.S.C. § 1983

*Fourth Amendment Violations*

**(Defendants Vallejo, Malone, Phelps)**

79.

Plaintiff re-alleges each and every aforementioned paragraph as if fully restated herein.

80.

Plaintiff was subject to an unreasonable strip search at the hands of Camden County Correction Officers, acting under the color of law with the authority of the Camden County Sheriff's Office.

81.

Prisoners retain a constitutional right to bodily privacy, and under the Fourth Amendment, strip searches must be reasonable.

82.

The strip search of Plaintiff was unreasonable because Defendant Vallejo deliberately left the door to Room 103 propped open, allowing Officer Brooks (a female to see inside Room 103 while the strip search was occurring).

83.

The strip search of Plaintiff was also unreasonable because Defendants Vallejo, Malone, and Phelps violated internal policy, which stated that strip searches are only permitted where the officers have probable cause to believe the detainee is concealing something. Plaintiff had already been pat searched, was not arrested on a violent offense or drug offense, and he posed no obvious threat. There was no reasonable suspicion to strip search him.

84.

There is not an internal Camden County Sheriff's Office policy to strip search every intake prisoner for safety.

85.

Instead, the Camden County Sheriff's Office policy is that corrections officers are only permitted to perform a strip search if there is probable cause the intake prisoner is in possession of drugs, weapons, or other contraband.

86.

The strip search violated internal polices of the Camden County Sheriff's Office.

87.

Defendants Vallejo, Malone, and Phelps were aware of the Camden County Sheriff's Office policy, and in fact, they did not strip search each and every intake prisoner.

88.

Given the above circumstances, there was no legitimate penological purpose for strip searching Plaintiff.

89.

Instead, Defendant Malone initiated the strip search for the sole purpose of humiliating, degrading, shaming, embarrassing, and inflicting psychological pain on Plaintiff and was therefore unreasonable.

90.

Knowing the only purpose of the strip search was to humiliate, degrade, shame, and embarrass Plaintiff, Defendants Phelps and Vallejo assisted Defendant Malone in the strip search.

91.

When combined with the force used to affect the strip search and the search serving no penological purpose, the strip search was objectively and obviously unreasonable.

92.

As evidence of the lack of penological purpose (such as safety), Defendants Phelps, Vallejo, Malone never even completed the strip search after the use of force incident.

93.

Nothing changed in between the decision to strip search Plaintiff and the use of force incident which would impact the penological or safety calculation of the officers.

94.

As such, the forcible strip search violated Plaintiff's Fourth Amendment rights.

95.

Importantly, the unconstitutional strip search set in motion the chain of events which led to the unnecessary and excessive use of force applied against Plaintiff.

96.

Therefore, Defendants Vallejo, Malone, and Phelps are liable to Plaintiff under the Fourth Amendment and 42 U.S.C. § 1983.

*Fourteenth Amendment*

**(Defendants Vallejo, Malone, Phelps, Benjamin, and Douglas)**

97.

Plaintiff re-alleges each and every aforementioned paragraph as if fully restated herein.

98.

Plaintiff was denied due process at the hands of Camden County Corrections Officers, acting under the color of law with the authority of the Camden County Sheriff's Office.

99.

Objectively unreasonable force purposely or knowingly used against a pretrial detainee denies that pretrial detainee of due process.

100.

Prison officials step over the line of constitutionally permissible conduct if they use more force than is reasonably necessary in an existing situation.

101.

If the force is applied maliciously and sadistically to cause harm, it is excessive under the Fourteenth Amendment.

102.

Defendants Vallejo, Malone, and Phelps used more force than reasonably necessary in the existing situation with Plaintiff.

103.

Furthermore, Defendants Vallejo, Malone, and Phelps applied that force maliciously and sadistically to cause harm.

104.

The use of force against Plaintiff violated internal Camden County Sheriff's Office policies and procedures.

105.

Following the use of force, Plaintiff demonstrated clear and obvious injuries, necessitating immediately medical care.

106.

Corrections Officer Laurie Brooks asked Defendant Malone if she could call for medical assistance.

107.

Defendant Malone denied Brooks' request.

108.

Defendants Benjamin and Douglas were on shift and aware of Plaintiff's injuries, and they decided to not call for medical care.

109.

In fact, all corrections officers on shift were aware of Plaintiff's injuries and the severity thereof because the amount of blood Plaintiff lost through his head wound was excessive.

110.

In the main control room, Defendant Benjamin listened as Plaintiff pleaded for medical care and complain of severe headaches, while he was strapped to the Pro-Restraint Chair.

111.

She ignored his complaints, despite knowing that Defendant Malone had to get a mop and bucket to clean up all the blood he lost during the use of force incident.

112.

Defendant Benjamin watched blood stream down his face, watched his head swell, and did nothing other than pass paper towels to Defendants Malone and Vallejo to wipe away the blood.

113.

Afterwards Defendants Vallejo, Malone, and Phelps bragged to Defendant Benjamin and others that, "they got another one."

19

114.

Defendants Vallejo, Malone, Phelps, Benjamin, and Douglas were deliberately indifferent to Plaintiff's medical needs.

115.

As a result of Defendants Vallejo, Malone, Phelps, Benjamin, and Douglas' denial of medical care to Plaintiff, he missed a critical window to potentially counteract or heal from his injuries.

116.

Elements of Plaintiff's injuries are expected to be lifelong conditions.

117.

Therefore, Defendants Vallejo, Malone, Phelps, Benjamin, and Douglas are liable to Plaintiff under the Fourteenth Amendment and 42 U.S.C. § 1983.

<em>Punitive Damages</em>

118.

Plaintiff re-alleges each and every aforementioned paragraph as if fully restated herein.

119.

In their use of force tactics against Plaintiff, Defendants Vallejo, Malone, and Phelps were recklessly and callously indifferent to the federally protected rights of Plaintiff.

120.

Therefore, punitive damages are appropriate against Defendants Vallejo, Malone, and Phelps.

*Attorneys' Fees*

121.

Plaintiff re-alleges each and every aforementioned paragraph as if fully restated herein.

122.

The violation of Plaintiff's constitutional rights is highly significant and the litigation of the same accomplishes a public good.

123.

Plaintiff is entitled to recover his attorneys' fees in pursuit of this litigation under 42 U.S.C. Section 1988(b).

## 42 U.S.C. § 1983 CONSPIRACY CLAIMS – DENIAL OF ACCESS TO THE COURTS

**(Defendants Watson, Mastroianni, Phelps, Vallejo, Hatfield, and Malone.)**

124.

Plaintiff re-alleges each and every aforementioned paragraph as if fully restated herein.

125.

Defendants Watson, Mastroianni, Phelps, Vallejo, Hatfield, and Malone had a meeting of the minds or agreement to deprive Plaintiff of his constitutional rights by tampering with evidence in furtherance of protecting their own criminal and/or tortious behavior, as well as protecting the pecuniary interest of themselves and the Sheriff's Office at Plaintiff's expense.

126.

The agreement between Defendants Watson, Mastroianni, Phelps, Vallejo, Hatfield, and Malone is evidenced by the following acts:

a. Defendant Hatfield discussed the excessive force incident with all or some of the other named Defendants prior to obtaining the false, coerced statement from Plaintiff.

b.  Defendants Watson and Mastroianni met in person and discussed the destruction of personnel records and other documents relevant to the use of force incident.

c. Defendants Mastroianni and Phelps discussed the alteration of the original incident report regarding the use of force against Plaintiff.

d. Defendants Watson, Mastroianni, Phelps, Vallejo, and Malone were aware of, complicit in, and assisted in the burying of the personnel write ups of Defendants Phelps, Vallejo, and Malone resulting from the use of force against Plaintiff.

127.

Defendants Watson, Mastroianni, Phelps, Vallejo, Hatfield, and Malone each participated in at least one over act in furtherance of the conspiracy as follows:

a. Proper procedure dictates that eyewitness statements should be obtained following a use of force incident. Immediately following Plaintiff's incident, Officer Laurie Brooks asked Defendant Malone whether she needed to write a witness statement for Plaintiff's incident; Defendant Malone said, "no" and that he would "handle the report."

b. The morning after use of force incident, Defendant Hatfield coerced Mr. Drummond to make a false written statement that Mr. Drummond initiated the physical contact against Defendant Malone.

c. Defendants Watson and Mastroianni directed or assisted in the destruction, burying, and/or alteration of documentary evidence relating to the events of January 24, 2021, including the personnel write-ups, use of force report, and incident report.

d. Defendant Phelps assisted in the alteration of original documentation relating to the incident report.

e. Defendants Vallejo and Malone assisted in the destruction, burying, and/or alteration of their own personnel records relating to the events of January 24, 2021.

f. Later, after receipt of Plaintiff's open records requests, Defendant Mastroianni would orchestrate the production of only limited evidence, most of which had been edited or altered, and stonewall the production of the most incriminating evidence.

128.

As a result of their conspiracy, Defendants Watson, Mastroianni, Hatfield, Phelps, Vallejo, and Malone denied Plaintiff the rights and privileges of United States citizen, including but not violations under the First, Fourth, and Fourteenth Amendments of the U.S. Constitution, as well as Article IV's Privileges and Immunities Clause.

129.

Plaintiff has a property interest in pursuing his claims against these Defendants for the violations of his constitutionally protected rights.

130.

Defendants' falsification, alteration, and destruction of documents delayed Plaintiff and his counsel from discovering the truth regarding the cause of his injuries, which would form the basis for Plaintiff's claim for redress of the violation of his constitutionally protected rights.

131.

The concealment of these facts led to a delay in Plaintiff instituting this action; these Defendants therefore conspired to deny Plaintiff access the Courts to prosecute his claims.

132.

This delay has damaged Plaintiff, at least nominally.

133.

Defendants Watson, Mastroianni, Phelps, Vallejo, Hatfield, and Malone engaged in a 42 U.S.C. § 1983 civil conspiracy and are liable to Plaintiff for their conduct.

*Punitive Damages*

134.

Plaintiff re-alleges each and every aforementioned paragraph as if fully restated herein.

135.

In conspiracy to cover-up the excessive force, Defendants Watson, Mastroianni, Phelps, Vallejo, Hatfield, and Malone intentionally and recklessly violated the federally protected rights of Plaintiff.

136.

Therefore, punitive damages are appropriate against Defendants Watson, Mastroianni, Phelps, Vallejo, Hatfield, and Malone.

*Attorneys' Fees*

137.

Plaintiff re-alleges each and every aforementioned paragraph as if fully restated herein.

138.

The violation of Plaintiff's constitutional rights, in particular the cover-up and denial of access to the courts, is highly significant and the litigation of the same accomplishes a public good.

139.

Plaintiff is entitled to recover his attorneys' fees in pursuit of this litigation under 42 U.S.C. Section 1988(b).

## ASSUALT AND BATTERY

### (Defendants Vallejo, Malone, and Phelps)

140.

Plaintiff re-alleges each and every aforementioned paragraph as if fully restated herein.

141.

As demonstrated in surveillance audio and video recordings, Defendants Vallejo, Malone, and Phelps were verbally abusive to Plaintiff and intended to cause Plaintiff to fear for his safety.

142.

Defendants Vallejo, Malone, and Phelps intentionally and violently injured Plaintiff.

143.

Therefore, Defendants Vallejo, Malone, and Phelps are liable to Plaintiff for the torts of assault and battery.

### *Punitive Damages*

144.

Plaintiff re-alleges each and every aforementioned paragraph as if fully restated herein.

145.

Defendants Vallejo, Malone, and Phelps actions demonstrated willful misconduct, malice, wantonness, oppression, and that entire want of care which would raise the presumption of conscious indifference to their consequence.

146.

Therefore, punitive damages are appropriate against Defendants Vallejo, Malone, and Phelps.

*Attorneys' Fees*

147.

Plaintiff re-alleges each and every aforementioned paragraph as if fully restated herein.

148.

Considering the information provided to Defendants Vallejo, Malone, and Phelps pre-suit and their failure to engage with Plaintiff whatsoever regarding that information, Defendants Vallejo, Malone, and Phelps have been stubbornly litigious, acted in bad faith, and have caused Plaintiff unnecessary trouble and expense.

149.

Therefore, Plaintiff is entitled to recover his attorneys' fees.

## FEDERAL FAILURE TO TRAIN, DISCIPLINE, AND SUPERVISE CLAIM

**(Defendant Sheriff Proctor and Defendant Mastroianni)**

150.

Plaintiff re-alleges each and every aforementioned paragraph as if fully restated herein.

151.

Prior to Plaintiff's use-of-force incident, Officers within Camden County Jail had a pattern of using excessive force against pre-trial detainees, in violation of their rights U.S. Constitutional rights as guaranteed by the Fourteenth Amendment, including but not limited to excess force used against pre-trial detainee Castleberry, which will be corroborated by former Camden Sheriff's Officer Laurie Brooks.

152.

Further evidencing the failure to train, discipline, and supervise, Defendants Watson and Mastroianni, as supervisors within the Sheriff's Office, were presented with clear internal violations of Sheriff's Office policy, one of which was a violation of the use of force policy, regarding Plaintiff's incident.

153.

Rather than act on those obvious policies violations, which included constitutional violations, Defendants Watson and Mastroianni destroyed those personnel write-ups, and the Sheriff's Office took no disciplinary action against Officers Phelps, Malone, or Vallejo.

154.

 Defendants Mastroianni's covered up the policy violations because disciplining the officers would be admitting "that we did something wrong."

155.

As such, there was culture of deliberately not disciplining or correcting Camden Sheriff's officers who perpetuated Constitutional violations against detainees.

156.

Defendant Mastroianni has worked for the Camden County Sheriff's Office for longer than two decades, much of time working with Defendant Sheriff Proctor, who is also a personal friend.

157.

During his tenure with the Camden County Sheriff's Office, Defendant Mastroianni has been disciplined for making a false statement and for insubordination.

158.

The insubordination arose from an incident where a supervisor noted that Defendant Mastroianni was supervising a shift which consistently failed to make incident reports.

159.

In response to that supervisor's remark, Defendant Mastroianni responded, "I'm not going to tell them to do that!"

160.

Defendant Mastroianni has a pattern of making false statements and creating a culture wherein his subordinates are encouraged to not report incidents.

161.

Knowing this history and pattern, Defendant Sheriff Proctor promoted Defendant Mastroianni to the role of Jail Administrator.

162.

Defendant Sheriff Proctor was aware of or should have been aware of the widespread issue of excessive force being employed at the Camden County Jail, including the aforementioned culture, and he failed to implement any changes to the training, discipline, or supervision policy.

163.

Additionally, Officers within Camden County Jail have a pattern of altering or destroying evidence, in violation of U.S. Constitutional rights as guaranteed by the First and Fourteenth Amendments, including but not limited to post-hac revisions to employee personnel files and annual reviews.

164.

Sheriff Proctor was aware of or should have been aware of the widespread practice of violating and tampering with evidence and other material documentation, in violation of the First and Fourteenth Amendment rights of others.

165.

Despite this knowledge, Sheriff Proctor failed to change or amend the training policies with the Camden County Sheriff's Office.

166.

Based on the foregoing, Defendant Sheriff' Proctor and Defendant Mastroianni were deliberately indifferent to the rights of the Camden Jail's detainees and others. Therefore, Defendant Sheriff Proctor and Defendant Mastroianni are liable to Plaintiff for their failure to train and supervise other officers.

## <u>OPEN RECORDS ACT CLAIMS</u>

### (Defendant Mastroianni)

167.

Plaintiff re-alleges each and every aforementioned paragraph as if fully restated herein.

168.

Plaintiff, though undersigned counsel, sent his first open records act request to the Camden County Sheriff's Office on February 4, 2021, seeking all documentation potentially relevant to Plaintiff's use-of-force incident.

169.

Defendant Mastroianni ordered that the Sheriff's Office records staff only produce the materially altered/edited Incident Report and the false, the coerced written statement, and in operable video footage.

170.

Under the direction of Defendant Mastroianni, the Camden County Jail never supplemented that response to the open records request; in other words, the Camden County Jail never sent (1) the original incident report, (2) the use of force report, and (3) the personnel write ups of Vallejo, Phelps, and Malone.

171.

Pursuant to OCGA § 50-18-74(a), Defendant Mastroianni and potentially others are liable to Plaintiff for violations to the Open Records Act, including civil penalties and attorney's fees.

WHEREFORE, Plaintiff prays:

a)      For general damages, including pain and suffering;

b)      For all special damages, including medical and incidental expenses, and other consequential damages according to proof;

c)      For civil penalties pursuant to OCGA § 50-18-74(a);

d)      For costs of suit herein incurred, including attorneys' fees;

e)      For punitive damages;

f)      For nominal damages where appropriate;

g)      For such other and further relief as the court may deem proper;

h)      That Plaintiff have a trial by jury as to all issues so triable.


The 12th day of July 2022.


                                          /s/ *M. Waite Thomas*
                                          M. Waite Thomas, Esq.
                                          Georgia State Bar No. 617667
                                          *Attorney for Plaintiff*

TAYLOR, ODACHOWSKI, SCHMIDT
      & CROSSLAND, LLC
300 Oak Street, Suite 200
St. Simons Island, Georgia   31522
Phone: (912) 634-0955
Fax:     (912) 638-9739
Email: wthomas@tosclaw.com

## CERTIFICATE OF SERVICE

This hereby certifies that on this day, I electronically filed the ***Plaintiff's Second Amended Complaint*** with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

Sun S. Choy, Esq.
schoy@fmglaw.com
Wesley C. Jackson
wjackson@fmglaw.com
Freeman Mathis & Gary, LLP
100 Galleria Parkway
Suite 1600
Atlanta, Georgia 30339-5948

Respectfully submitted, this ____12th____ day of __July__ 2022.

                                     _/s/ *M. Waite Thomas*_____
                                       M. Waite Thomas, Esq.
                                       Georgia State Bar No. 617667
                                       *Attorney for Plaintiff*

TAYLOR, ODACHOWSKI, SCHMIDT
   & CROSSLAND, LLC
300 Oak Street, Suite 200
St. Simons Island, Georgia   31522
Phone: (912) 634-0955
Fax:     (912) 638-9739
Email: wthomas@tosclaw.com