IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | | |
|---|---|---|
| ADAM DRUMMOND, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | FILE NO.: 2:22-CV-00033-LGW-BWC |
| v. | ) | |
| | ) | |
| CAMDEN COUNTY SHERIFF JIM | ) | |
| PROCTOR, in his personal capacity, | ) | |
| SHERIFF'S CORRECTIONS OFFICER | ) | |
| LARRY PHELPHS, in his personal | ) | |
| capacity, SHERIFF'S CORRECTIONS | ) | |
| OFFICER CORPORAL JORDAN | ) | |
| MALONE, in his personal capacity, | ) | |
| SHERIFF'S CORRECTIONS SERGEANT | ) | |
| LUIS VALLEJO, in his personal capacity | ) | |
| SHERIFF'S DEPUTY MAJOR ROB | ) | |
| MASTROIANNI, SR., in his personal | ) | |
| capacity, SHERIFF'S DEPUTY | ) | |
| LIEUTENANT ERIC WATSON, in his | ) | |
| personal capacity, SHERIFF'S | ) | |
| CORRECTIONS OFFICER RAKITA | ) | |
| DOUGLAS, in her personal capacity, | ) | |
| SHERIFF'S CORRECTIONS OFFICER | ) | |
| KENDALL BENJAMIN, in her personal | ) | |
| capacity, SHERIFF'S CORRECTIONS | ) | |
| OFFICER WILLIAM HATFIELD, in his | ) | |
| personal capacity. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS CAMDEN COUNTY SHERIFF JIM PROCTOR, LARRY PHELPS, JORDAN MALONE, LUIS VALLEJO, ROB MASTROIANNI, ERIC WATSON, RAKITA DOUGLAS, WILLIAM HATFIELD AND KENDALL BENJAMIN'S REPLY BRIEF IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

COME NOW defendants Camden County Sheriff Jim Proctor, Larry Phelps, Jordan

Malone, Luis Vallejo, Rob Mastroianni, Eric Watson, Rakita Douglas, William Hatfield, and

Kendall Benjamin and file this reply brief in support of their partial motion to dismiss plaintiff Adam Drummond's second amended complaint (Doc. 35).

## I.     ARGUMENT AND CITATION TO AUTHORITY

### A.     Plaintiff Fails to State a Violation of His Fourth Amendment Rights With Respect to the Search.

#### 1.     *No constitutional violation*

In his response to defendants' moving brief, plaintiff attempts to conflate an alleged policy violation with a federal constitutional violation. (Doc. 39, pp. 5–6.) As noted in defendants' moving brief, "Section 1983 only provides a remedy for violations of federal statutes or the federal Constitution, not of internal policies. A violation of a jail's rules, regulations, and/or policies, without more, does not give rise to a federal constitutional violation." Davis v. Pope, No. CV 511-105, 2013 WL 3934209, at *8 (S.D. Ga. July 30, 2013).

Furthermore, while plaintiff argues that Powell v. Barrett, 541 F.3d 1298 (11th Cir. 2008) only upholds strip searches in jails when they are performed on every prisoner, that is not an interpretation of Powell shared by the Eleventh Circuit Court of Appeals. In Watkins v. Pinnock, 802 F. App'x 450 (11th Cir. 2020), the Eleventh Circuit applied Powell in holding that officers did not violate clearly established law when they subjected an inmate to a strip search *not* pursuant to a policy of searching every inmate in the jail, but instead because the inmate "had been singing a song with violent and threatening lyrics, and he admit[ted] that he had been arguing with Deputy Pinnock as he was escorted to the jail." Watkins v. Pinnock, 802 F. App'x 450, 456 (11th Cir. 2020). Indeed, in this case, plaintiff admits in his amended complaint that he "did not want to answer" the booking officer's questions and he was "difficult" during the intake process which, he claims, "is common for DUI cases." (Doc. 35, ¶¶ 25, 27.) If, as in Watkins, it is appropriate to strip-search an inmate who argues with an officer on the way to intake, it is

certainly reasonable to search a drunk, difficult, and uncooperative inmate as well. Accordingly, these defendants did not violate plaintiff's constitutional rights by subjecting him to a strip search.

> ### 2.   *No violation of "clearly established" law*

In addition to failing to show an underlying constitutional violation with respect to the strip search, plaintiff also fails to show a violation of *clearly established* law with respect to the search such that these defendants are entitled to qualified immunity. In response to defendants' qualified immunity argument, plaintiff suggests that a violation of an internal policy is prima facie evidence that defendants violated clearly established law. (Doc. 39, p. 8.) This is not the standard. As argued defendants' moving brief, in this Circuit, the law can be clearly established for qualified immunity purposes only by decisions of the United States Supreme Court, the Eleventh Circuit Court of Appeals, or the Georgia Supreme Court. Jenkins v. Talladega City Bd. of Educ., 115 F.3d 821, 823 n.4 (11th Cir. 1997). Furthermore, plaintiff's reliance on Hanners v. Humphries, No. 5:12-CV-245-MTT-CHW, 2012 WL 5386149 (M.D. Ga. Nov. 1, 2012) fails for the same reason: as an unpublished trial court decision, it cannot clearly establish that these officers' conduct violated clearly established law.[1]

Beyond this, a plaintiff can show that an official's conduct was so obvious that its unlawfulness was readily apparent to the official committing the act. Wade v. United States, 13 F.4th 1217, 1226 (11th Cir. 2021). Plaintiff cites to Evans v. Stephens, 407 F.3d 1272

---

[1] While defendants relied on Hanners themselves as persuasive authority that a strip-search in front of members of the opposite sex are not *per se* unconstitutional, plaintiff's burden to overcome the defendant's qualified immunity defense is to point to "clearly established," factually similar case law showing that the officers' conduct violated the constitution. Given the Eleventh Circuit's standards for what constitutes "clearly established" law, cases that may be persuasive in showing the contours of a constitutional right in one sense cannot always be used to satisfy the "clearly established" law prong of the qualified immunity analysis.

(11th Cir. 2005), to support his argument that the Eleventh Circuit has applied this reasoning to unreasonable strip searches. (Doc. 39, p. 8.) The present case is readily distinguishable from the facts presented in Evans. In Evans, the officer conducted a post-arrest evidentiary strip search of the plaintiffs inside of a broom closet at the jail after having already twice conducted a pat-down of their person. Evans, 407 F.3d at 1280. Plaintiffs alleged the officer took them to a "supply closet or mop storage room" at the jail and forced the plaintiffs to undress before physically assaulting them and striking one of them with a baton. Id. at 1276. Next, plaintiffs alleged the officer used a baton-like object to penetrate their anuses and lift their genitals while taunting plaintiffs with laughter, racist language, and threats of prison before ordering them to redress themselves. Id. at 1276–77. The court held that the manner in which the officer conducted the strip search, while not established by existing case law, constituted an obvious violation of plaintiffs' constitutional right to be free from unreasonable searches. Id. at 1283.[2]

Clearly, the conduct by the officer in Evans is worlds apart from the conduct alleged by plaintiff in his second amended complaint. Other than his conclusory allegations that the strip search was conducted without any penological purpose and done in violation of the jail's policy, plaintiff has not alleged any conduct on behalf of the defendants which would lead the Court to believe that defendants violated any clearly established law or exceeded the "hazy border" which separates lawful conduct from the unlawful. Accordingly, defendants are entitled to qualified immunity on plaintiff's unlawful search claim and it is due to be dismissed.

---

[2] The court also held the officer violated plaintiffs' constitutional rights by conducting an investigatory strip search for drugs without having at least reasonable suspicion to do so. Id. at 1280. However, the court stressed that by doing so it was not extending this standard to strip searches for other purposes, "such as, searches conducted by jailers on arrestees bound for a jail's general population as part of a safety or security routine of the jail. In this case, we are also not dealing with a search for weapons that might pose a threat to the safety of law officers or others." Id. at 1279, fn.8.

**B.**   **Plaintiff Fails to State a Violation of His Fourteenth Amendment Rights Against Defendants Benjamin and Douglas.**

Once again, plaintiff has alleged nothing more than that Douglas and Benjamin "were aware" that he was injured—he makes no allegation as to what type of interaction he had with them (if any), what symptoms he presented when interacting with them, whether he requested medical care from them, whether they understood that his injuries were more than superficial cuts and abrasions, etc. As argued in defendants' moving brief, such sparse allegations fail to state a claim for deliberate indifference as a matter of law.

In his response, plaintiff attempts to shore up his imprecise pleading by pointing to several paragraphs in his second amended complaint (¶¶ 15, 36, and 38) which contain general descriptions of his purported injuries to establish that Benjamin and Davis are implicated in his deliberate indifference claim. (Plaintiff's Resp., p. 11.) Plaintiff argues his conclusory allegation that Benjamin and Davis were "aware" of his injuries was somehow supposed to be interpreted to mean that they perceived *all* of the injuries described in his second amended complaint. (Plaintiff's Resp., p. 11.); cf. Mulvaney v. Meeks, No. 2:13CV677-MHT, 2021 WL 130970, at *5 (M.D. Ala. Jan. 13, 2021) ("[t]he allegations in the complaint that these defendants "knew" and "were aware" of Mulvaney's condition and the substantial risk of serious harm she faced are unentitled to an assumption of truth because they are a conclusory tracking of one of the legal elements at issue, namely the subjective awareness subpart of the deliberate indifference prong.") Mulvaney v. Meeks, No. 2:13CV677-MHT, 2021 WL 130970, at *5 (M.D. Ala. Jan. 13, 2021)

If plaintiff intended to allege that Benjamin and Davis actually saw the "inches long" gash in his head, the "pool of blood" on the floor, and then subjectively understood that plaintiff had a serious medical need that required immediate medical attention, then then that is what he should have pleaded. Instead, he attempts to lump Benjamin and Davis into his deliberate

indifference claims simply because they were "on shift" at the time, leaving defendants and the Court to guess as to exactly what their involvement was. Such pleading is insufficient to state a claim for deliberate indifference under.

Accordingly, the Court should dismiss plaintiff's § 1983 Fourteenth Amendment claim against defendants Benjamin and Douglas.

**C.**     **Plaintiff's § 1983 Conspiracy Claim is Barred by the Intracorporate Conspiracy Doctrine and Qualified Immunity.**

   *1.*     *Plaintiff fails to state a claim for § 1983 conspiracy to deny access to the Courts.*

As shown in defendants' brief, in order to state a claim for denial of access to the courts, plaintiff must have alleged "that [he was] or would have been prevented from filing [his claims] within the statute of limitations period, [or] that the Defendants' actions would have made such a suit inadequate, ineffective, or not meaningful." See Chappell v. Rich, 340 F.3d 1279, 1283–84 (11th Cir. 2003). Plaintiff here has alleged nothing of the sort, nor does he even address the controlling Eleventh Circuit Court of Appeals' decision in Chappel, much less distinguish it. Plaintiff has had no trouble at all bringing his § 1983 claims in the instant action.

Furthermore, the authority cited in plaintiff's response regarding his "access to courts" claim is inapplicable. To start, plaintiff cites to Hadley v. Gutierrez, 526 F.3d 1324, 1332 (11th Cir. 2003) for the proposition that covering up the use of excessive force might hinder a *criminal* defendant's access to the courts. (Doc. 39, p. 12.) Plaintiff's reliance on Hadley is misleading. Obviously, he is not a criminal defendant. And, obviously again, he was not denied access to the court's on his Fourth and Fourteenth Amendment § 1983 claims—he has asserted them in the present case. Similarly, plaintiff's reliance on Miracle by Miracle v. Spooner, 978 F.Supp. 1161 (N.D. Ga. 1997) is also misplaced, as the Court in that case dismissed the access to courts claim for the same reason cited by defendants here: "Plaintiffs fail to present any evidence of actual

injury. The alleged conspiracy to falsify documents did not prevent Plaintiffs from bringing any claims, has not caused any claim to be rejected, and has not impeded Plaintiffs' efforts at redress. The fact that the Plaintiffs maintain this action without any deleterious effects emanating from the Defendants' alleged conspiracy defeats Plaintiffs' claim." Miracle by Miracle v. Spooner, 978 F. Supp. 1161, 1173 (N.D. Ga. 1997).

In short, plaintiff cannot maintain an "access to courts" claim where his access to the Courts was never denied. Accordingly, he has failed to state a claim for § 1983 conspiracy to deny access to the Courts.

### 2.     The exceptions to the intracorporate conspiracy doctrine do not apply here

Plaintiff claims that the intracorporate conspiracy doctrine does not apply here because of exceptions to the doctrine. There are three potential exceptions: (1) "convictions involving criminal charges of conspiracy," (2) where the employee has an "independent personal stake" in his unconstitutional acts and is not acting to further the corporation's illegal objective, or (3) where the employees "engage in a series of discriminatory acts as opposed to a single action" over a significant period of time in the employment setting." Grider v. City of Auburn, Ala., 618 F.3d 1240, 1262 (11th Cir. 2010) (citing Dickerson v. Alachua County Com'n, 200 F.3d 761, 768 (11th Cir. 2000)).

Here, defendants are not under indictment for criminal conspiracy charges, so the first exception does not apply. While some courts have held that the criminal charge exception may apply in civil conspiracy claims under 42 U.S.C. § 1985(2) and (3), plaintiff has not alleged such a claim here. See, e.g., McAndrew v. Lockheed Martin Corp., 206 F.3d 1031, 1034 (11th Cir. 2000). Additionally, while plaintiff has asserted this criminal conspiracy exception to the intracorporate conspiracy doctrine in his response brief, on defendant's motion to dismiss it is his

complaint that matter—and the complaint makes no mention of the alleged federal crimes. <u>See,</u> <u>e.g.</u>, <u>Bowe v. City of Hallandale Beach</u>, No. 0:16-CIV-60993, 2016 WL 10587945, at *2 (S.D. Fla. Dec. 12, 2016) (applying intracorporate conspiracy doctrine where "Plaintiffs point to 18 U.S.C. § 241 and 18 U.S.C, § 242, two criminal statutes that Plaintiffs claim encompass Defendants' conduct. However, the Court agrees with Defendants that Plaintiffs have made no mention of these criminal statutes in the Complaint, nor are there sufficient facts to put Defendants on notice that Plaintiffs are alleging criminal activity occurred."). Accordingly, the criminal conspiracy exception does not apply here.

Plaintiff also claims the "independent personal stake" exception applies. It does not. The Eleventh Circuit explicitly has not adopted the "independent personal stake" exception to the intercorporate conspiracy doctrine. <u>McPhie v. Yeager</u>, 819 F. App'x 696, 701 (11th Cir. 2020).

Accordingly, the intracorporate conspiracy doctrine applies in this case and bars plaintiff's conspiracy claims.

### 3.    *Defendants are entitled to qualified immunity on the conspiracy claim*

In his response, plaintiff fails to cite to any controlling authority to support his assertion that defendants are not entitled to qualified immunity as to his § 1983 conspiracy claims. Rather, he simply includes his argument that defendants are not entitled to qualified immunity on this claim within his broader argument that the officers did, in fact, commit conspiracy actionable under § 1983. (<u>See</u> Doc. 39, p. 12.)

The problem with plaintiff's qualified immunity argument—or lack thereof—is that the "clearly established law" analysis is separate and distinct from the "constitutional violation" analysis. Even if plaintiff could show that the officers' conduct violated his constitutional rights (he has not—<u>see</u> Part I.C.1 *supra*), he would still have to cite to some prior case from the

Georgia Supreme Court, the United States Supreme Court, or a published decision from the Eleventh Circuit Court of Appeals showing that *the specific conduct alleged against defendants* amounts to § 1983 conspiracy. Because he has failed to even make this argument, defendants are entitled to qualified immunity on that claim and it must be dismissed.

**D.**    **Plaintiff Fails to State a Claim for Failure to Train, Discipline, and Supervise Against Sheriff Proctor and Mastroianni.**

   *1.    Sheriff Proctor is not subject to supervisory liability to the extent such claims are brought pursuant to § 1983*

As shown in defendants' initial brief, plaintiff fails to state a claim against Sheriff Proctor *in his individual capacity* because he does not allege that Sheriff Proctor personally committed an act which caused a violation of plaintiff's constitutional rights. Again, "Supervisors can be held personally liable when either (1) the supervisor personally participates in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor and the alleged constitutional violation." Mann v. Taser Intern., Inc., 588 F.3d 1291, 1308 (11th Cir. 2009). A causal connection can be established (1) "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," (2) "when a supervisor's custom or policy results in deliberate indifference to constitutional rights," or (3) "when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

Apparently conceding that he has no such facts to support allegations in his complaint to satisfy the Eleventh Circuit's standards for supervisors' personal liability under § 1983, plaintiff proffers a different standard: the one used for Monell liability against municipalities and other local governments. (See, e.g., Doc. 39 at p. 17.) Plaintiff quite brazenly edits Eleventh Circuit

authority regarding <u>Monell</u> liability to imply that it also applies to sheriffs in their personal capacities. Specifically, plaintiff cites <u>Knight through Kerr v. Miami-Dade County</u>, for the proposition that, in plaintiff's words, a Sheriff can be liable for deliberate indifference, and "[t]o establish deliberate indifference, a plaintiff must present some evidence that the [*sheriff*] knew of a need to train . . . in a particular area and the [*sheriff*] made a deliberate choice not to take action." (Doc. 39, p. 17 (emphasis added).) Here, plaintiff excised the word "municipality" and replaced it with "sheriff." <u>Compare</u> <u>id.</u> with <u>Knight through Kerr v. Miami-Dade Cnty.</u>, 856 F.3d 795, 820 (11th Cir. 2017) ("To establish 'deliberate indifference,' a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." <u>Knight through Kerr v. Miami-Dade Cnty.</u>, 856 F.3d 795, 820 (11th Cir. 2017).

While plaintiff attempts to represent the <u>Monell</u> standard as one applying to sheriffs in their individual capacities, <u>Knight</u> in fact very explicitly only referred to *municipal* liability in this portion of its opinion. <u>Id.</u> In the very next paragraph of the opinion, the court in <u>Knight</u> outlined the standards for holding supervising officials independently liable under § 1983 for failing to train subordinates:

> either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." . . . The necessary causal connection "can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." **But one incident will not suffice**; rather, "[t]he deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences." As we have recognized, "[t]he standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous."

Id. at 820 (citations omitted, emphasis added).

Plaintiff then goes on to cite City of Oklahoma v. Tuttle, 471 U.S. 808, 832 (1985) and Vinyard v. Cty. of Murray, 990 F.2d 1207 (11th Cir. 1993) as cases establishing that one constitutional violation is sufficient to establish liability against Sheriff Proctor in his individual capacity. (Doc. 39, pp. 17-18.) The problem with plaintiff's argument is that City of Oklahoma and Vinyard both concerned claims of municipal liability—not individual capacity claims against supervisors.[3]

Thus, plaintiff has edited authority to suggest that the Monell standard of liability—which can occasionally be premised on a single incident—may apply to a claim against a Sheriff in his individual, even though the very cases cited and edited by plaintiff explicitly state that "one incident will not suffice" to hold a supervisor liable in his individual capacity. The Court should reject plaintiff's misapplication of the law out of hand. Not only is plaintiff's legal argument wrong, but he has already *voluntarily dismissed* his claims against Sheriff Proctor in his official capacity. (Compare Doc. 1 (naming Sheriff Proctor in his official and in dividual capacity) with Doc. 39 (naming Sheriff Proctor only in his individual capacity). He cannot now attempt to apply an official-capacity standard for liability against a defendant in his individual capacity. Accordingly, the Court should grant Sheriff Proctor's motion to dismiss plaintiff's supervisory liability claim against him.

### 2.    *Major Mastroianni is not subject to supervisory liability for failure to train*

In response to defendants' argument that plaintiff failed to allege how Major Mastroianni failed to train his subordinates, plaintiff argues that Major Mastroianni can be liable for his direct participation in the alleged conspiracy. (Doc. 39, p. 19.) However, that is an independent claim

---

[3] In Vinyard, the trial court had already directed a verdict in favor of the Sheriff in his individual capacity. That decision was not at issue on appeal. Vineyard, 990 F.2d at 1210.

plaintiff has already asserted against Major Mastroianni. Because plaintiff concedes that his failure to train claim against Major Mastroianni is based on the same allegations giving rise to his conspiracy claim against Major Mastroianni, the Court should dismiss the failure to train claim as redundant. (As shown above, though, plaintiff has also failed to state a claim for conspiracy against Mastroianni.)

### 3. *Plaintiff failed to show any prior incidents establishing a failure to train*

As shown in defendants' initial brief, plaintiff has failed to allege any prior incidents that would give rise to supervisory liability claims against Sheriff Proctor or Major Mastroianni. While plaintiff again references some prior inmate named Castleberry, he otherwise does not allege what happened with Castleberry or whether Sheriff Proctor knew about this incident. Furthermore, plaintiff cannot amend his complaint through his response brief to include new allegations regarding a prior incident where defendants Vallejo and Malone allegedly beat a detainee named Singleton. The circumstances regarding this prior incident were not included in plaintiff's second amended complaint and should not be considered by the Court on defendants' motion to dismiss.

### 4. *Sheriff Proctor and Mastroianni are entitled to official immunity on plaintiff's state-law claims*

Defendants devoted two pages of argument in their opening brief asserting official immunity on behalf of defendants Sheriff Proctor and Major Mastroianni with respect to plaintiff's state law claims against them, to the extent he brought any. Plaintiff did not offer any response to this argument. Accordingly, to the extent plaintiff has brought state law claims against Sheriff Proctor or Major Mastroianni in their supervisory capacities, the Court should dismiss those claims as abandoned.

**E.**   **Plaintiff has Failed to State a Claim Under O.C.G.A. § 50-8-74.**

Plaintiff's response does not shed any light as to what document or documents he is alleging were withheld by Mastroianni in response to his open records act request. To state the obvious, plaintiff cannot state a claim for failure to produce records in response to an open records act request without identifying what records were actually withheld. Plaintiff believes, without providing any factual support, that Mastroianni refused to produce documents in order to facilitate a cover up of the jail's write-ups and prior drafts of reports. This is not sufficient to state a claim for violation of the Georgia Open Records Act.

**II.**     **CONCLUSION**

For the reasons addressed above and in their moving brief, defendants respectfully request this Court grant their partial motion to dismiss plaintiff's second amended complaint.

Respectfully submitted this 21st day of September, 2022.

                                    **FREEMAN MATHIS & GARY, LLP**


                                    */s/ Wesley C. Jackson*
                                    SUN S. CHOY
                                    Georgia Bar No. 025148
                                    schoy@fmglaw.com
                                    WESLEY C. JACKSON
                                    Georgia Bar No. 336891
                                    wjackson@fmglaw.com
                                    STEVEN L. GRUNBERG
                                    Georgia Bar No. 146397
                                    sgrunberg@fmglaw.com

                                    *Attorneys for defendants*

100 Galleria Parkway, Suite 1600
Atlanta, GA 30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day electronically submitted the foregoing *DEFENDANTS CAMDEN COUNTY SHERIFF JIM PROCTOR, LARRY PHELPS, JORDAN MALONE, LUIS VALLEJO, ROB MASTROIANNI, ERIC WATSON, RAKITA DOUGLAS, WILLIAM HATFIELD, AND KENDALL BENJAMIN'S REPLY BRIEF IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT* to the Clerk of Court using the CM/ECF system which will automatically send electronic mail notification of such filing to counsel of record who are CM/ECF participants. Counsel of record are:

M. Waite Thomas
Taylor Odachowski Schmidt Crossland, LLC
300 Oak Street
St. Simons Island, Georgia 31522
wthomas@tosclaw.com

Adrienne Browning
Alan D. Tucker
Tucker & Browning Law, P.C.
Riverfront Plaza
4 Saint Andrews Court
Brunswick, GA 31520
adrienne@tuckerandbrowning.com
alan@tuckerandbrowning.com

This 21st day of September, 2022.

*/s/ Wesley C. Jackson*
WESLEY C. JACKSON
Georgia Bar No. 336891
wjackson@fmglaw.com

FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway, Suite 1600
Atlanta, GA 30339-5948
(770) 818-0000 (telephone)

(770) 937-9960 (facsimile)