IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| Adam Drummond, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| Camden County Sheriff Jim Proctor, in his official capacity, Sheriff's Corrections Officer Phelps, in his official and personal capacity, Sheriff's Corrections Officer Corporal Malone, in his official and personal capacity, Sheriff's Corrections Sergeant Vallejo, in his official and personal capacity, Sheriff's Deputy Major Mastroianni, in his official and personal capacity, Sheriff's Deputy Lieutenant Watson, in his official and personal capacity, and John and Jane Does 1-3, in their personal and official capacities. | ) ) ) ) ) ) ) Civil Action File No. ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## **AFFIDAVIT OF LAURIE BROOKS**

Personally, appeared before me, the undersigned attesting officer duly authorized to administer oaths, Laurie Brooks, who, after being first duly sworn, deposes and states as follows:

1.

My name is Laurie Brooks. I am over 18 years old and am competent to give this affidavit, which I am providing based on my personal knowledge. This affidavit is being made in support of the above-referenced case.

2.

I was formerly employed with the Camden County Sheriff's Office as a Corrections Officer. I worked there for slightly under one year.

3.

On January 23 and 24 of 2021, I served on the "D" shift at the Camden County Jail (the "Jail"), which was the overnight shift. I worked "D" shift at the jail from June of 2020 to February of 2021.

4.

On that particular shift, I worked with other Corrections Officers, Sergeant Vallejo, Corporal Malone, Officer Phelps, and Officer Benjamin.

5.

Sergeant Vallejo and Corporal Malone were my superior officers. Sergeant Vallejo was the ranking officer on the shift.

6.

At or around 1:00 am in the morning on January 25, 2021, we received "intake" prisoner Adam Drummond, who the Kingsland Police Department ("PD") arrested for driving under the influence of alcohol ("DUI").

7.

The Kingsland PD dropped Mr. Drummond off at the Jail through the "Sally Port" area, which is a covered driveway designed for prisoner drop-offs.

8.

Officer Phelps and others received him from the patrol car and escorted him from the Sally Port to the Intake Area of the Jail.

9.

Upon entering the Jail, Mr. Drummond was pat searched. No contraband was found on his person.

10.

At the time, I was waiting in the Intake Area to get information from Mr. Drummond to process or "book" him, including a medical questionnaire.

11.

Mr. Drummond was intoxicated and did not want to answer questions, which is common for DUI cases.

12.

While he may have been difficult, Mr. Drummond was not aggressive or combative in any way.

13.

I never once felt threatened in his presence.

14.

While Officer Phelps and I were booking Mr. Drummond in the Intake Area, Corporal Malone arrived into the area from the Main Control Room.

15.

Corporal Malone immediately started escalating the situation with Mr. Drummond, and Corporal Malone decided to strip search him.

16.

In my experience and my understanding of the internal policies, there was no reason to conduct a strip search of Mr. Drummond. His behavior was consistent with many DUI cases, and he had previously been pat searched. Mr. Drummond also did not demonstrate any behavior that would indicate that possessed contraband, and he had no history of possession contraband or drugs.

17.

Because Corporal Malone was my superior officer, I felt as if I could not stop the strip search and did not object to it.

18.

However, I left the Intake Area and went to the Main Control Room, at which point Sergeant Vallejo also decided to join Officer Phelps and Corporal Malone in the Intake Area.

19.

Sometime after I left, Officer Phelps, Corporal Malone, and Sergeant Vallejo escorted Mr. Drummond to "Room 103," the area of the Jail where strip searches were conducted. There are no cameras in Room 103.

20.

The Main Control Room has a window to the Intake Area, and it also has a partial view of Room 103.

21.

I observed Officer Phelps, Corporal Malone, and Sergeant Vallejo enter Room 103 with Mr. Drummond.

22.

I could see into Room 103 through a crack in the door and window in upper part of the door.

23.

Sergeant Vallejo was propping the door slightly open (to keep it from closing and locking). Corporal Malone and Officer Phelps were inside Room 103.

24.

At all times that I witnessed the room, Mr. Drummond was facing away from the three officers.

25.

From my view of the situation, Mr. Drummond remained relatively compliant and non-aggressive.

26.

Within several minutes of the three Officers and Mr. Drummond entering Room 103, I heard an altercation occur and observed Mr. Drummond on the ground.

27.

From the Main Control Room, I observed Mr. Drummond on the ground with the Officer Phelps and Corporal Malone on top of him.

28.

It was clear to me that during the course of the strip search, Officer Phelps, Corporal Malone, and Sergeant Vallejo participated in "use of force" against Mr. Drummond.

29.

Following the use of force incident, I also observed a great deal of blood in Room 103, more blood than I had ever observed at the Jail before or since that night. It could not just be wiped up with towels; the whole floor had to be mopped.

30.

When a floor needs to be mopped, typical practice was for a "trustee" to mop it. In this case, a corrections officers mopped the floor.

31.

Based on my observations and my later view of Mr. Drummond's head injuries, I believe it was impossible that he could have pushed or shoved any of the officers in Room 103.

32.

The incident disturbed me.

33.

Based on my training and experience, I would call the incident an excessive use of force.

34.

Following the use of force incident, Officer Phelps, Corporal Malone, and Sergeant Vallejo put Mr. Drummond in the Pro Restraint Chair.

35.

As Mr. Drummond was in the Pro Restraint Chair, Corporal Malone wiped the blood from Mr. Drummond's face.

36.

Later, I asked Corporal Malone and Sergeant Vallejo whether Mr. Drummond should be "checked out" by a medical provider. Corporal Malone responded that he was "fine."

37.

Mr. Drummond did not get checked out by a medical provider on my shift.

38.

I cannot speak to what Officer Phelps, Corporal Malone, and Sergeant Vallejo subjectively knew, but I was aware the of the strip search policy and that Officer Phelps, Corporal Malone, and Sergeant Vallejo violated it. The policy was made very clear to Corrections Officers, both in initial and ongoing training.

39.

Beginning on the morning of January 25, 2021, Sergeant Vallejo and Corporal Malone started openly discussing that they would likely be sued over the "use of force" used against Mr. Drummond.

40.

I have recently learned that Sergeant Vallejo, Corporal Malone, and Officer Phelps claimed that they strip searched "everyone" during the intake process.

41.

That claim is false. I personally observed many intake prisoners who were not strip searched during Shift D, while Corporal Malone, Sergeant Vallejo, and Officer Phelps were on duty.

42.

Although this affidavit was physically prepared by others, these are my words. I had the full opportunity to review, change, and correct anything and everything contained within it.

FURTHER AFFIANT SAYETH NAUGHT

Respectfully submitted, this \_\_26\_\_ day of August 2021.

_____
Laurie Brooks

Sworn and subscribed before me
on this \_26\_ day of Aug., 2021.

_____
Notary Public
My Commission Expires: GEORGIA SEPT. 21, 2021