# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### BRUNSWICK DIVISION

| | |
|---|---|
| Adam Drummond, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| Camden County Sheriff Jim Proctor, in | ) |
| his official capacity, Sheriff's Corrections | ) |
| Officer Phelps, in his official and personal | ) |
| capacity, Sheriff's Corrections Officer | ) |
| Corporal Malone, in his official and | ) |
| personal capacity, Sheriff's Corrections | ) Civil Action File No. |
| Sergeant Vallejo, in his official and | ) |
| personal capacity, Sheriff's Deputy Major | ) |
| Mastroianni, in his official and personal | ) |
| capacity, Sheriff's Deputy Lieutenant | ) |
| Watson, in his official and personal | ) |
| capacity, and John and Jane Does 1-3, in | ) |
| their personal and official capacities. | ) |
| | ) |
| | ) |
| Defendants. | ) |

## <u>AFFIDAVIT OF JENNIE SIKES</u>

Personally, appeared before me, the undersigned attesting officer duly authorized to administer oaths, Jennie Sikes, who, after being first duly sworn, deposes and states as follows:

1.

My name is Jennie Sikes. I am over 18 years old and am competent to give this affidavit, which I am providing based on my personal knowledge. This affidavit is being made in support of the above-referenced case.

2.

I was formerly employed with the Camden County Sheriff's Office for eleven years. My last role was as the Corrections Officer Staff Sergeant – Jail Training Officer.

3.

At the Camden County Sheriff's Office, I started as a Corrections Officer, was promoted to Corporal, then to Sergeant, and lastly to Staff Sergeant.

4.

As part of my duties, I investigated "use of force" incidents to determine whether internal policies and procedures were properly implemented, and if they were not, I would take appropriate action to ensure that mistakes or intentional misconduct would not be repeated, including but not limited to issuing "write ups" or reprimands.

5.

If a particular incident called for a write-up or counseling form, I would consolidate all my research on the incident and provide my findings and conclusions to my immediate supervisor, Lieutenant Watson – Jail Administrator's Assistant.

6.

Lieutenant Watson would then take research, findings, and conclusions to Major Mastroianni – Jail Administrator.



7.

On January 25, 2021, I became aware that Sheriff's Corrections Officers Phelps, Sergeant Vallejo, and Corporal Malone implemented "use of force" tactics against Adam Drummond, while he was an inmate in the Camden County Jail on January 24, 2021. I became aware of the incident through receipt of the "Use of Force" form and Incident Report left in my cubby.

8.

I investigated the incident, including saving all the necessary video and audio of the incident. The video included the Sally Port, the Intake Area, the Holding Cell, the Phone Usage Area, the Holding Hallways, Main Control, and the Release Time.

9.

After reviewing the audio and visual footage, Lieutenant Watson and I concluded that Sheriff's Corrections Officers Phelps, Sergeant Vallejo, and Corporal Malone did not have reasonable or probable cause to conduct a strip search of Mr. Drummond.

10.

Against policy, Sheriff's Corrections Officers Vallejo, Phelps, and Corporal Malone conducted a strip search of Mr. Drummond outside of camera view in Area 103.

11.

During the course of the strip search, Sheriff's Corrections Officers Vallejo, Phelps, and Corporal Malone participated in "use of force" against Mr. Drummond.

12.

When they all emerged from the strip search room, Mr. Drummond's face was completely bloodied, he was trying to cover himself, and the strip search area was covered in blood.

13.

Prior to the use of force, Sheriff's Corrections Corporal Officer Malone was in the main control room, listening to Mr. Drummond's intake process. Something occurred that spurred Malone to jump up from his desk in the main control room and make his way to the A&B Booking Area, where Mr. Drummond was currently being held.

14.

Based on the mugshot photographs taken after the "use of force," I could tell Mr. Drummond had a head injury.

15.

From my review of the incident, it was my opinion that the "use of force" was unnecessary and unwarranted.

16.

I determined that Sheriff's Corrections Officers Vallejo, Malone, Phelps violated multiple internal policies.

17.

I presented my conclusions regarding the strip search and "use of force" to Lieutenant Watson. He agreed that the strip search and "use of force" were unwarranted.



18.

On January 28, 2021, Lieutenant Watson counseled Sheriff's Corrections Officers Phelps, Sergeant Vallejo, and Corporal Malone regarding the above violations. They were specifically counseled that they did not have probable cause to strip search Mr. Drummond, and their failure to follow policy led to the unnecessary use of force. Further, they were counseled that sending three officers to the "Sally Port" for a non-combative intake is not a common practice.

19.

Sheriff's Corrections Officers Phelps, Sergeant Vallejo, and Corporal Malone responded to the counseling stating that strip searched "everyone" who comes to the jail on their shift. This is a blatant violation of the policy, confirmed by Lieutenant Watson. No other shift operates like this.

20.

Following the counseling, Lieutenant Watson advised me to move forward with preparing write-ups for each Sheriff's Corrections Officers Phelps, Sergeant Vallejo, and Corporal Malone. I wrote them up on February 1, 2021. Specifically, I wrote up each Corrections Officer for (1) conduct unbecoming of an officer, (2) failure to follow Strip Search Policy No. 3-2 (failure to establish probable cause for Mr. Drummond's strip search), (3) failure of the "the duty to know", Policy No. 1-2, (4) failure to comply with duty of personal bearing and attention to duty, Policy No. 1-6, (5) dereliction of duty, Policy No. 1-5, (6) failure to observe and give effect to the policies of the office, (7) failure to obey or willful violation of any rule, regulation, or policy of the office, and (8) unnecessary violence toward any person.

21.

I compiled Exhibit "A" to my affidavit and provided it to my supervisors, Sheriff's Deputy Lieutenant Watson and Sheriff's Deputy Major Mastroianni.

22.

Lieutenant Watson spoke to Major Mastroianni regarding the incident the Corrections Officers' conduct. Major Mastroianni ordered that no action be taken against the Officers.

23.

Lieutenant Watson recounted his conversation with Major Mastroianni to me.

24.

Major Mastroianni later stated to me that the Officers would not receive punishment because "punishing them would mean we are admitting to doing wrong," or something along those lines.

25.

Additionally, according to Lieutenant Watson, Major Mastroianni advised Lieutenant Watson to "throw away his notes" regarding the incident, after ensuring that they were the only copy.

26.

However, Lieutenant Watson kept the notes and showed them to me.



27.

Lieutenant Watson later told me that he went to Sheriff's Deputy Colonel Byerly and asked Byerly, how to "protect himself" and what he was supposed to do if these issues resurfaced, or something along those lines.

28.

In early February of 2021, I received the first Open Records Request on behalf of the Jail from Mr. Drummond's attorney regarding his incident.

29.

Upon receiving this Open Records Request from an attorney, in early February of 2021, Lieutenant Watson and I were aware that the issue of Mr. Drummond's treatment would not go away and that civil litigation surrounding Mr. Drummond's incident was likely.

30.

After receipt of the Open Records Request, Lieutenant Watson and I continued to speak with Major Mastroianni, hoping that something would be done about the "use of force" employed against Mr. Drummond.

31.

Lieutenant Watson conveyed to me that, in his opinion, Corrections Officer Corporal Malone should be terminated, that Corrections Officer Sergeant Vallejo should be demoted, and that Corrections Officer Phelps should receive a certain amount of time-off without pay and be placed on probation.



32.

I believe that Lieutenant Watson made the same recommendation to Major Mastroianni.

33.

From my knowledge, nothing ever occurred to Sheriff's Corrections Officers Sergeant Vallejo and Corporal Malone. Instead, Malone was promoted, Vallejo left voluntarily and is returning as a shift supervisor. Corrections Officer Phelps similarly received no disciplinary action.

34.

I reviewed the original incident report drafted by Corrections Officers Phelps and Sergeant Vallejo on January 25, 2021. I believe the original narratives within the incident report were drafted on January 24, 2021.

35.

I have direct and personal knowledge that the narratives drafted by Sheriff's Corrections Officer Phelps and Sergeant Vallejo have been altered.

36.

Sheriff's Corrections Officer Phelps and Sergeant Vallejo submitted the original version of the incident report narratives, and Major Mastroianni marked through the narratives and advised Phelps to make the suggested changes.

37.

I have direct and personal knowledge that the system used by the Camden County Sheriff's Office to create incident reports tracks all changes and should reflect how it has been altered.

8



38.

The proper policy is to make all changes to incident reports within the system, so that changes can be tracked and time stamped in the "audit report" of the system.

39.

If Sheriff's Corrections Officer Phelps and Sergeant Vallejo's original narrative and subsequent changes have not been saved, they have been deliberately deleted and/or altered.

40.

The Sheriff's Office terminated my employment on April 12 of this year, effective immediately.

41.

Exhibit "A" to my affidavit (Ex. A) is a copy of Mr. Drummond's file which I kept on a black filing cabinet in my office prior to my termination.

42.

I personally did not take Ex. A from the Sheriff's Office premises. Sheriff's Office personnel returned Ex. A to me, through my husband Danny Sikes, in a sealed bankers box following my termination, mixed in with various other document and personal effects.

43.

The documents contained within Ex. A are true and correct copies of the documents created for Mr. Drummond's incident.

44.

Although this affidavit was physically prepared by others, these are my words. I had the full opportunity to review, change, and correct anything and everything contained within it.

FURTHER AFFIANT SAYETH NAUGHT

Respectfully submitted, this ___12___ day of August 2021.

_____
Jennie Sikes

Sworn and subscribed before me
on this 12th day of August, 2021.

_____
Notary Public
My Commission Expires:

DAWN L NELSON
NOTARY
EXPIRES
GEORGIA
SEPT 24, 2022
PUBLIC
GLYNN COUNTY, GA

**Contents/Notes:**

Rec'd call from Pam w/ Walter Thomas, Esq.
912-634-0955 on 2/16/2021.

Re: Drummond, Adam.

Requested that we re-send videos. I advise the videos were too large to email. So I will put on thumb drive and mail to her.

pmallard@ tosclaw.com

2/24/2021 @ 4:48 Christy called.   912-643-0955
regarding pams request for a new file—
video file. (I was put of the office sick w/ covid-eye)

2/26/2021 Mailed out.

✱ Walton went to Buyers, asking who/how he can be protected when Walton advised him to Disregard/throw away his original notes & videos incident.



*updated*

**JAMES K. PROCTOR, SHERIFF**
CAMDEN COUNTY
P.O. BOX 699
209 E 4th ST
WOODBINE, GA 31569

## USE OF FORCE

AGENCY ID # GA0200000      CASE #_ 2021-00000218_____ PG #___1___ OF __1____

INCIDENT DATE ___01__/_24__/_21___      INCIDENT TIME _____0156 HRS_____

INCIDENT LOCATION _____Holding Room 103_____

| OFFICERS INVOLVED | INMATES INVOLVED |
|---|---|
| Cpl Malone | |
| Ofc Phelps | Drummond, Adam |
| Sgt Vallejo | |

NARRATIVE: DESCRIBE IN DETAIL _____SEE NARRATIVE_____

TYPE OF FORCE USED___X___ RESTRAINT CHAIR _____OTHER, EXPLAIN _____

INJURY TO INMATE? __X__YES ____NO      IF YES, WHAT? ___Laceration to the right side of his head from hitting an edge _____

DID INMATE RECEIVE MEDICAL TREATMENT? ___X__YES ____NO   IF YES, WHAT? _____ _____MEDICAL CLEARED HIM FROM USE OF FORCE (BANDAGE, WOUND WAS CLEANED AS WELL)
INJURY TO OFFICER? _____YES __X__NO      IF YES, WHAT?_____

DID OFFICER RECEIVE MEDICAL TREATMENT? _____YES __X__NO   IF YES, WHAT? ____

WITNESS NAMES _____      _____

REPORTING OFFICER ___ OFC Phelps_____      DATE ___01__/_24__/_21___

SUPERVISOR _____Cpl Malone #1263_____      DATE___01__/_24__/_21__



# Incident Report

Incident: 2021-00000234



Camden County Sheriff's Office
ORI Number: GA0200000

**Print Date/Time:** 02/01/2021 14:56
**Login ID:** lvriquelme

## Details

| | | | | | |
|---|---|---|---|---|---|
| **Incident Type:** | Use of Force | **Reporting Officer:** | CA754 - Phelps | **Assigned To:** | CA754 - Phelps |
| **Incident Date/Time:** | 01/24/2021 01:56 AM | **Reported Date/Time:** | 01/24/2021 01:56 AM | **Assigned Date:** | 01/24/2021 03:22 AM |
| **Incident Location:** | | | | | |
| **Description:** | Pro Restraint Chair | | | | |

## Subjects

| Name | Subject Type | Booking Number | Charges |
|---|---|---|---|
| Drummond, Adam Christopher | Offender | 2021-00000218 | N |

## Subject Charges

## Violations

| | | | | | |
|---|---|---|---|---|---|
| **Seq Number:** | 1 | **Violator:** | Drummond, Adam Christopher | **Violation:** | A06 Failure to comply with order |
| **Location:** | | | | **Requires Reclassification:** | N |
| **Seq Number:** | 2 | **Violator:** | Drummond, Adam Christopher | **Violation:** | A11 Disorderly conduct |
| **Location:** | | | | **Requires Reclassification:** | N |
| **Seq Number:** | 3 | **Violator:** | Drummond, Adam Christopher | **Violation:** | B03 Disobeying an Officer |
| **Location:** | | | | **Requires Reclassification:** | N |



# Incident Report

Incident: 2021-00000234



**Print Date/Time:** 02/01/2021 14:56
**Login ID:** lvriquelme

Camden County Sheriff's Office
**ORI Number:** GA0200000

---

## Narrative

On 1/24/2021 @0140 Hrs KPD had brought in Inmate Drummond Adam (2021-00000218) on a DUI Charge. As I stepped towards the patrol car in the Sally Port, I Could tell that Mr. Drummond was being Irate towards Corporal Peterkin (KPD). Officer Peterkin had asked Drummond Numerous Times to step out of the Vehicle but refused to comply and Kept yelling that he had a cough and also had COVID-19. I was Able to get him out of the patrol car and escorted him inside to begin the booking process. Inmate Drummond was Pat Searched and Cuff were taken off. Officer Brooks began asking his medical questions in which he became loud and irate again and refused to answer them. Corporal Malone arrived to the Booking Area to see what Drummond's deal but Drummond Kept Running his mouth and since he wouldn't answer the Medical Question, Corporal Malone decided to skip the Medical Questioner. Judgement Call was made to stripsearch him due to his iratic Behavior/Demeanor. We proceeded to Escort him to Room 103 were we began our strip search procedure. Corporal Malone instructed inmate Drummond to take off his shoes, pants and shirt. and which he responded with "Why do I have to, I'm not taking anything off" so Corporal explained to him that we were conducting a Strip Search Procedure but he completely Disregarded what he had to say and Stood there. In suspicion that he may be hiding something by denying to follow our strip search procedure, He was assisted on removing his clothing. His shirt and shoes were successfully taken off. Sergeant Vallejo arrived on scene with us and explained to Drummond that he needed to help us so we could expedite the process and get him in a cell to rest. At this time as He looked up towards Sgt Vallejo and padded him in the chest stating Thanks for Clarifying on why I needed to get undressed. Sgt Vallejo gave him the benefit of the doubt he was Drunk and Just told him not to put your hands on him if not they were going to have issues and continued to place Drummond's Shoes on the Property bag. At that time Drummond still was not cooperating with the strip search and went zero to one hundred. He became aggressive and shouted "get your fucking hands off me" as he Pushed me and Corporal Malone aggressively. He was immediately taken to the ground. Sergeant Vallejo came in and assisted us in attempt to place hand-restraints on him. Drummond kept resisting and would not give up his hands to cuff up .Sergeant Vallejo gave Drummond Loud Lawful Verbal commands to stop resisting but he ignored them and kept on moving around not willing to cuff up by hiding his hands underneath his body. Closed hand technique was used in order to gain positive control of Inmate Drummond's hands in which cuffs were finally applied and double locked. He was escorted to the Pro-Restraint Chair for his safety and the Safety of the Facility. No further Use OF Force Necessary.

End Of Narrative

Ofc Phelps #1225


On 01/24/2021 After Drummond Completed his 2 hours in the Pro Restraint Chair we noticed he had a small laceration to the side of his head that may had been cause from hitting the edge of something during the altercation. We were able to clean it and bandage it until our Day shift Nurse was able to see him and medically clear him from our Use of force. He also Apologized for his wrong doing in A&B. Later that Day We recieved a Letter From Dayshift that Inmate Drummond had wrote apologizing to Cpl Malone for His Actions. All Documents were Attatched and are on file.


End Of Narrative

Sgt Vallejo #1260

**Signature:** _[signature]_                    **Date:** 1/24/21

**Reviewed:** _____               **Date:** _____

**Medical Notified:** _____ YES _____ NO    **Date:** _____

Page: 2 of 2



Drummond, Adam Christopher
Drummond mug shot
01/24/2021 04:15

2021-0000210

- 0433 placed in cell H6.
- When he is brought out to complete booking he hides ~~his~~ his face.
- Inmate used phone @ 6:55 Am
- Pulled video ...
  - A & B
  - Booking Hallway(s)
  - Main control

Incident # 2021-00000234

· Inmate is standing up knocks on door @ 8:20 am

· 8:59 am Finally was able to come out and use the bathroom.

✳ Phelps was advised to change narrative - Major corrected them verbiage. ✳

✳ Expressed to major that something needed to be done — However he did not wish to admit they had done anything wrong.

In discussion w/ warden - he recommended

    · Vullign be demoted

    · Malone be terminated

    · phelps have drop off w/ last pay

✳ Violation of policy — use of force ✳



Drummond, Adam Christopher
Drummond mug shot
01/24/2021 04:15

- Pulled video    1/25/21
- gave to Lt. Watson for review. 1/26/21
- Lt. Reviewed   1/27-28/21, spk w/ staff involved.
- Wrote on counseling form — failure to follow policy, guidelines.
- Completed write-ups & printed out policy
    for each officer involved.
- Chief updated narrative.
- All information provided to Major. 2/2/2021

WDJSSY

Vallejo last day 2/4/21.

Cpl. Malone running Chitt acting as Sgt.
w/ me training.    @ 1:30p   2/10/21



# Incident Report

Incident: 2021-00000234



**Print Date/Time:** 02/01/2021 14:56
**Login ID:** lvriquelme

Camden County Sheriff's Office
**ORI Number:** GA0200000

---

## Narrative

On 1/24/2021 @0140 Hrs KPD had brought in Inmate Drummond Adam (2021-00000218) on a DUI Charge. As I stepped towards the patrol car in the Sally Port, I Could tell that Mr. Drummond was being Irate towards Corporal Peterkin (KPD). Officer Peterkin had asked Drummond Numerous Times to step out of the Vehicle but refused to comply and Kept yelling that he had a cough and also had COVID-19. I was Able to get him out of the patrol car and escorted him inside to begin the booking process. Inmate Drummond was Pat Searched and Cuff were taken off. Officer Brooks began asking his medical questions in which he became loud and irate again and refused to answer them. Corporal Malone arrived to the Booking Area to see what Drummond's deal was but Drummond Kept Running his mouth and since he wouldn't answer the Medical Question, Corporal Malone decided to skip the Medical Questioner. Judgement Call was made to stripsearch him due to his iratic Behavior/Demeanor. We proceeded to Escort him to Room 103 were we began our strip search procedure. Corporal Malone instructed inmate Drummond to take off his shoes, pants and shirt. and which he responded with "Why do I have to, I'm not taking anything off" so Corporal explained to him that we were conducting a Strip Search Procedure but he completely Disregarded what he had to say and Stood there. In suspicion that he may be hiding something by denying to follow our strip search procedure, He was assisted on removing his clothing. His shirt and shoes were successfully taken off. Sergeant Vallejo arrived on scene with us and explained to Drummond that he needed to help us so we could expedite the process and get him in a cell to rest. At this time as He looked up towards Sgt Vallejo and padded him in the chest stating Thanks for Clarifying on why I needed to get undressed. Sgt Vallejo gave him the benefit of the doubt he was Drunk and Just told him not to put your hands on him if the strip search and continued to place Drummond's Shoes on the Property bag. At that time Drummond still was not cooperating with the strip search and went zero to one hundred. He became aggressive and shouted "get your fucking hands off me" as he Pushed me and Corporal Malone aggressively. He was immediately taken to the ground. Sergeant Vallejo came in and assisted us in attempt to place hand-restraints on him. Drummond kept resisting and would not give up his hands to cuff up .Sergeant Vallejo gave Drummond Loud Lawful Verbal commands to stop resisting but he ignored them and kept on moving around not willing to cuff up by hiding his hands underneath his body. Closed hand technique was used in order to gain positive control of Inmate Drummond's hands in which cuffs were finally applied and double locked. He was escorted to the Pro-Restraint Chair for his safety and the Safety of the Facility. No further Use OF Force Necessary.

End Of Narrative

Ofc Phelps #1225

On 01/24/2021 After Drummond Completed his 2 hours in the Pro Restraint Chair we noticed he had a small laceration to the side of his head that may had been cause from hitting the edge of something during the altercation. We were able to clean it and bandage it until our Day shift Nurse was able to see him and medically clear him from our Use of force. He also Apologized for his wrong doing in A&B. Later that Day We recieved a Letter From Dayshift that Inmate Drummond had wrote apologizing to Cpl Malone for His Actions. All Documents were Attatched and are on file.

End Of Narrative

Sgt Vallejo #1260

**Signature:** _[signature]_          **Date:** 1/24/21

**Reviewed:** _____          **Date:** _____

**Medical Notified:** _____ YES _____ NO          **Date:** _____

# Jail Employee Counseling Form

Counseling Date: _1/28/2021 & 2/1/2021__

Employee's Name: Sergeant Vallejo

**This Counseling is being issued because of the following (Select all that apply):**

_____ Attendance _____ Behavior/Teamwork _____ Inappropriate Conduct

_____ Inappropriate Dress _____ Safety Violation _____ Work Quality

_____ Other _____

Incident Date: _1/24/2021_____ Time of Incident: _0156hrs _____

**Describe the nature of the incident (If applicable):**

I. Why 3 officers in the sally port?

II. Why the stripped search?

**Corrective Action:**

I. Spoke with all supervisors on 1/20/2021. Counseled on Improper Strip Search 2/1/2021; must have probable cause; which led to a use of force.

II. Not answering medical questions does not justify a strip search.

III. Sending 3 officers to the Sally port for a non-combative intake is not common practice.

**Employee Comments:**

Officers stated that they strip search everyone.

This form is intended to help direct the employee onto a successful path in the work place. It is important to make immediate and sustained improvement and the failure to do so could result in further disciplinary action, up to and including termination of employment.

_____     _____     _____
Officer's Signature                      Print Name                              Date

_____                                      _____
LT Watson- Jail Administrators Assistant Signature                    Date

## EMPLOYEE WARNING REPORT

| Employee Name | SERGEANT VALLEJO |
|---|---|
| **Warning Date** | 2/1/2021 |
| **Department** | CORRECTIONS / JAIL |
| **Shift** | D-SHIFT |
| **Badge #** | |

| Type of Violation | | | |
|---|---|---|---|
| Attendance | Carelessness | Disobedience | Safety |
| Tardiness | Work Quality | | |
| Other | | | |

| WARNING |
|---|

| Violation Date | |
|---|---|
| **Violation Time** | |
| **Violation Location** | |

| STATEMENTS | |
|---|---|
| **Company Statement** | **Employee Statement** |
| | **I concur with Company Statement** |
| Conduct Unbecoming of a Supervisor by failing to follow policy when they violated Strip Search Policy Number 3-2, II, a. states an inmate detained for the commission of a misdemeanor or traffic offense shall be subject to a strip search has probably cause to believe that the inmate is concealing evidence of the commission of a criminal offense. | **I disagree with Company Statement for the flowing reason:** |
| Video footage reviewed of Adam Drummond (2021-00000218) intake process. | |
| Additional Policy Violations included in this incident:<br>**1-2 Duty to Know** – all employees shall familiarize themselves with the Code of Conduct, General Orders, Policies and directives issue d by higher Authority.<br>**1-6 (c) Personal Bearing & Attention to Duty** – Sheriff's employee must keep with office business, failure to give to duty, or acts, which bring discredit upon the office; will not be tolerated.<br>**1-5 Dereliction of Duty**<br>(a)Failure to observe and give effect to the policies of the office. | |

| (b)Failure to Obey or willful violations of any rule, regulation, or policy of the office. (p) Unnecessary violence toward any person. | |
|---|---|
| | **I have entered my statement on the matter above.** |
| **Signature** **Date** | **Signature**                    **Date** |

### WARNING DECISION

| **Approved By:** | | **Title:** | | **Date:** |
|---|---|---|---|---|
| **I have read this warning decision and understand it.** | | | | |
| **Employee:** | | | **Date** | |
| **Person who prepared warning** | | | **Date** | |

### PREVIOUS WARNINGS

| TYPE | DATE | VERBAL | WRITTEN |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

### COPY DISTRIBUTION

| | Employee | Supervisor | Foreman |
|---|---|---|---|
| | Personnel | | |

# Jail Employee Counseling Form

Counseling Date: _1/28/2021 & 2/1/2021__

Employee's Name: Corporal Malone

## This Counseling is being issued because of the following (Select all that apply):

_____ Attendance _____ Behavior/Teamwork _____ Inappropriate Conduct

_____ Inappropriate Dress _____ Safety Violation _____ Work Quality

_____ Other _____

Incident Date: _1/24/2021_____ Time of Incident: _0156hrs_____

## Describe the nature of the incident (If applicable):

I. Why 3 officers in the sally port?

II. Why the stripped search?

## Corrective Action:

I. Spoke with all supervisors on 1/20/2021. Counseled on Improper Strip Search 2/1/2021; must have probable cause; which led to a use of force.

II. Not answering medical questions does not justify a strip search.

III. Sending 3 officers to the Sally port for a non-combative intake is not common practice.

## Employee Comments:

Officers stated that they strip search everyone.

This form is intended to help direct the employee onto a successful path in the work place. It is important to make immediate and sustained improvement and the failure to do so could result in further disciplinary action, up to and including termination of employment.

_____ _____ _____
Officer's Signature Print Name Date

_____ _____
LT Watson- Jail Administrators Assistant Signature Date

**EMPLOYEE WARNING REPORT**

| Employee Name | CPL. MALONE |
|---|---|
| Warning Date | 2/1/2021 |
| Department | CORRECTIONS / JAIL |
| Shift | D-SHIFT |
| Badge # | |

| Type of Violation | | | | | | |
|---|---|---|---|---|---|---|
| Attendance | | Carelessness | | Disobedience | | Safety |
| Tardiness | | Work Quality | | | | |
| Other | | | | | | |

**WARNING**

| Violation Date | |
|---|---|
| Violation Time | |
| Violation Location | |

**STATEMENTS**

| Company Statement | Employee Statement |
|---|---|
| | I concur with Company Statement |
| Conduct Unbecoming of a Supervisor by failing to follow policy when they violated Strip Search Policy Number 3–2, II, a. states an inmate detained for the commission of a misdemeanor or traffic offense shall be subject to a strip search has probably cause to believe that the inmate is concealing evidence of the commission of a criminal offense.<br><br>Video footage reviewed of Adam Drummond (2021–00000218) intake process.<br><br><u>Additional Policy Violations included in this incident:</u><br>1-2 Duty to Know – all employees shall familiarize themselves with the Code of Conduct, General Orders, <u>Policies</u> and directives issue d by higher Authority.<br>1-6 (c) Personal Bearing & Attention to Duty – Sheriff's employee must keep with office business, failure to give to duty, or acts, which bring discredit upon the office; will not be tolerated.<br>1-5 Dereliction of Duty<br>(a)Failure to observe and give effect to the policies of the office. | I disagree with Company Statement for the flowing reason: |

| (b)Failure to Obey or willful violations of any rule, regulation, or policy of the office. (p) Unnecessary violence toward any person. | |
|---|---|
| | I have entered my statement on the matter above. |
| **Signature** **Date** | **Signature**          **Date** |

| **WARNING DECISION** | | |
|---|---|---|
| | | |
| **Approved By:** | **Title:** | **Date:** |
| **I have read this warning decision and understand it.** | | |
| **Employee:** | | **Date** |
| **Person who prepared warning** | | **Date** |

| **PREVIOUS WARNINGS** | | | |
|---|---|---|---|
| **TYPE** | **DATE** | **VERBAL** | **WRITTEN** |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| **COPY DISTRIBUTION** | | |
|---|---|---|
| **Employee** | **Supervisor** | **Foreman** |
| **Personnel** | | |

# Jail Employee Counseling Form

Counseling Date: _1/28/2021 & 2/1/2021___

Employee's Name: Officer Larry Phelps

## This Counseling is being issued because of the following (Select all that apply):

_____ Attendance      _____ Behavior/Teamwork     _____ Inappropriate Conduct

_____ Inappropriate Dress     _____ Safety Violation      _____ Work Quality

_____ Other _____

Incident Date: _1/24/2021_____        Time of Incident: _0156hrs _____

## Describe the nature of the incident (If applicable):

   I.    Why 3 officers in the sally port?

   II.   Why the stripped search?

## Corrective Action:

   I.    Spoke with all supervisors on 1/20/2021. Counseled on Improper Strip Search 2/1/2021; must have probable cause; which led to a use of force.

   II.   Not answering medical questions does not justify a strip search.

   III.  Sending 3 officers to the Sally port for a non-combative intake is not common practice.

## Employee Comments:

Officers stated that they strip search everyone.

This form is intended to help direct the employee onto a successful path in the work place. It is important to make immediate and sustained improvement and the failure to do so could result in further disciplinary action, up to and including termination of employment.

_____     _____     _____
Officer's Signature                Print Name                  Date

_____           _____
LT Watson- Jail Administrators Assistant Signature        Date

## EMPLOYEE WARNING REPORT

| Employee Name | OFFICER LARRY PHELPS |
|---|---|
| Warning Date | 2/1/2021 |
| Department | CORRECTIONS / JAIL |
| Shift | D-SHIFT |
| Badge # | |

| Type of Violation | | | |
|---|---|---|---|
| Attendance | Carelessness | Disobedience | Safety |
| Tardiness | Work Quality | | |
| Other | | | |

| WARNING | |
|---|---|
| Violation Date | |
| Violation Time | |
| Violation Location | |

| STATEMENTS | |
|---|---|
| Company Statement | Employee Statement |
| | I concur with Company Statement |
| | I disagree with Company Statement for the flowing reason: |
| Conduct Unbecoming of a officer by failing to follow policy when they violated Strip Search Policy Number 3-2, II, a. states an inmate detained for the commission of a misdemeanor or traffic offense shall be subject to a strip search has probably cause to believe that the inmate is concealing evidence of the commission of a criminal offense.<br><br>Video footage reviewed of Adam Drummond (2021-00000218) intake process.<br><br>Additional Policy Violations included in this incident:<br>1-2 Duty to Know – all employees shall familiarize themselves with the Code of Conduct, General Orders, Policies and directives issue d by higher Authority.<br>1-6 (c) Personal Bearing & Attention to Duty – Sheriff's employee must keep with office business, failure to give to duty, or acts, which bring discredit upon the office; will not be tolerated.<br>1-5 Dereliction of Duty<br>(a)Failure to observe and give effect to the policies of the office. | |

| (b)Failure to Obey or willful violations of any rule, regulation, or policy of the office. (p) Unnecessary violence toward any person. | |
|---|---|
| | I have entered my statement on the matter above. |
| Signature<br>Date | Signature      Date |

## WARNING DECISION

| Approved By: | | Title: | Date: |
|---|---|---|---|
| I have read this warning decision and understand it. | | | |
| Employee: | | | Date |
| Person who prepared warning | | | Date |

## PREVIOUS WARNINGS

| TYPE | DATE | VERBAL | WRITTEN |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

## COPY DISTRIBUTION

| Employee | Supervisor | Foreman |
|---|---|---|
| Personnel | | |

| CHAPTER: SECURITY INSPECTIONS | POLICY NUMBER: 3-2 |
|---|---|
| TITLE: STRIP SEARCH | |

## I. POLICY

Strip searches are conducted in the Camden County Jail as necessary to prevent the introduction of contraband/weapons.

## II. PROCEDURES

A. An inmate detained or confined for the commission of a misdemeanor or traffic offense shall be subject to a strip search when the Correction Officer, with the concurrence of the Shift Supervisor, has probable cause to believe that the inmate is concealing evidence of the commission of a criminal offense, including fruits or tools of crime, contraband or a deadly weapon, which could not be otherwise discovered, or when it is necessary for any legitimate medical or hygiene reason.

Inmates detained or confined for alleged commission of a felony, or sentenced to serve a term of imprisonment, shall be subject to a strip search when the inmate's present or prior behavior indicates that he is likely to be concealing contraband or a weapon.

B. Strip searches are to be conducted in an area that is secure and separate from other inmates. Only staff members who are the same sex as the inmate and who are conducting the search are to be present.

C. To conduct a strip search, Corrections Officers are to follow the steps listed:

1. Instruct the inmate to remove his clothing. As each article of clothing is removed, the inmate is to hand it to the Correction Officer so that it may be checked for contraband.
2. After the inmate is undressed, examine his body for any tape bandages that may conceal contraband. If a bandage is removed, it should be replaced with a fresh bandage.
3. Instruct the inmate to lean forward so the Correction Officer can search through his/her hair.
4. Direct the inmate to turn so his left side is facing the officer. Instruct the inmate to lean toward the officer in order for the area inside and behind his ears to be examined with the aid of a flashlight. Repeat this process for the right ear.
5. Direct the inmate to face the officer and tilt his head back so the nostrils can be checked.
6. Instruct the inmate to bend his head down, open his mouth, and wiggle his tongue back and forth. Ask the inmate if he wears dentures. If dentures are worn, tell the inmate to remove them so the dentures and mouth can be checked.
7. Have the inmate raise his arms so the armpits can be checked with the aid of a flashlight.
8. Inspect both of the inmate's hands including between the fingers and under the nails.
9. Examine the pubic area for lice with the aid of a flashlight. Instruct the

inmate to raise his testicles so the groin area can be checked.

10. Both male and female inmate will squat, spread their buttocks and cough.

11. Examine the bottom of the inmate's feet and between the toes by having the inmate raise one foot at a time.

12. Return the inmate's clothing or issued uniform so he can redress.

D. Any contraband located during the search is to be handled in accordance with Policy 3-6.

## SECTION 1-2

## DUTY TO KNOW

All employees shall familiarize themselves with the contents of the Code of Conduct, General Orders, and all other orders, policies, and directives issued by higher authority.

In any job or occupation, where numbers of people work together, certain rules are set out for employees. These rules are necessary for the success of the business as well as for the welfare of the employees. Discipline must be maintained, production kept up, safety requirements met. To operate efficiently, all employees must know the rules and regulations of the organization.

It is our responsibility to know how we are expected to carry out our duties and the rules prescribed to insure that we fulfill those duties. In fairness to the employee, these rules are reduced to writing so that he can know at all times what is expected of him, the standards he must meet, how he is expected to conduct himself as a member of the department.  It is the responsibility of each employee to be familiar with this Code of Conduct, General Orders, and all other orders issued for the government of the department.

## SECTION 1-6

## PERSONAL BEARING AND ATTENTION TO DUTY

Supervisory officers and other members of the office must remain alert, observant, and occupied with police business during their tour of duty and must not conduct themselves in a manner that would merit criticism for inattentiveness, slovenly bearing, or waste of time.

A. An Officer shall stand and walk erectly, evidencing his attention to duty by his bearing.

B. He shall not engage in personal conversations to the extent that he neglects his work, or gives the appearance of loitering or inattention to duty.

C. During his tour of duty, a Sheriff's employee must keep occupied with office business, waste of time, failure to give attention to duty, or acts of omissions which bring discredit upon the office will not be tolerated.

# SECTION 1-5

## DERELICTION OF DUTY

Dereliction of duty on the part of any member of the office, prejudicial to the proper performance of the functions of this department are causes for disciplinary action and will be punished according to the degree of the offence.

Failure of a supervisory officer to immediately take action when the violation comes to his attention shall constitute dereliction of duty on the part of the supervisor.

A. Failure to observe and give effect to the policies of the office.

B. Failure to obey orders or willful or repeated violations of any rule, regulation, or policy of the office.

C. Failure to make proper report of offenses investigated, observed, or reported.

D. Failure to deliver to the official departmental custodian any property found by, confiscated by, or relinquished to, members of this office.

E. Failure to place evidence in its officially designated place for preservation and storage.

F. Sleeping on duty.

G. For lack of energy of such character as to either case incompetency or neglect of duty.

H. Neglect of duty.

I. Violation of any county ordinance, rule, regulation, or policy of the county government, the civil service board, or this office.

J. Failure to give name and badge number upon request.

K. For being absent without leave. (Absence without leave under this rule shall mean either a failure to report for duty at the time and place of duty, or leaving of a place of duty or assignment without proper authorization).

L. For being under the influence of or drinking intoxicants on duty.

M. For intoxication in a public place while not on active duty.

N. For excessive use of intoxicants.

O. Willful disobedience of any lawful order issued to him.

P. For unnecessary violence toward any person.

Q. For disrespect shown to a supervisory officer.

R. For indecent, profane, or harsh language, used in performance of official duties.

S. For accepting, agreeing to accept, or soliciting a bribe. (A bribe under this rule shall be defined as a gift, emolument, money, or thing of value, testimonial, privilege, appointment, or personal advantage, or the promise or solicitation of wither, bestowed or promised for the purpose of obtaining special privileges or personal gain by the donor or other person.)

T. For cowardice.

U. For violation of any federal or state statues.

V. For conduct subversive to the good order and discipline of the office.

## SECTION 1-14

## CONDUCT UNBECOMING AN OFFICER

No officer of this office shall conduct himself in a manner unbecoming an officer and a gentleman, either on duty or off duty.

A. Members of the office shall be considered as always on duty for the purpose of discipline.

B. An officer who exhibits cowardice or shirks his duty in case of danger, shall be guilty of conduct unbecoming an officer.

C. No employee of the office shall borrow any money or accept gifts or favors from any person or persons known or suspected by him to be violators of the law.

D. All employees of the office shall obey the laws of the United States, the state, and the county.

E. All members of the office shall so regulate their personal affairs as not to bring justified unfavorable criticism or gossip from their neighbors or other citizens, or be involved personally in disturbances or police incidents to their discredit.

F. Sexual Harassment of others or the creation of a hostile work environment is unacceptable and will not be tolerated.

↩ Reply all | ˅    🗑 Delete    Junk | ˅    •••

# Re: Adam C. Drummond - Arrest: 01/24/2021



**Jennie L. Sikes**
Mon 3/8 3:57 PM
M. Waite Thomas <wthomas@tosclaw.com>    »

Sent Items

🐟   Phish Alert

↩ Reply all | ˅

I am so confused on why it is playing here, but not for you. I am sorry.

I checked it on two different computers.

You can call Fred (IT) at 912-510-5155.

Again, I am sorry; i just knew that it would work this time.

SSgt J Sikes #1204
Jail Training Officer
Camden County Sheriff's Office
209 E. 4th Street
Woodbine, GA 31569
912.510.5104
jlsikes@co.camden.ga.us

**From:** M. Waite Thomas <wthomas@tosclaw.com>
**Sent:** Monday, March 8, 2021 1:41:32 PM
**To:** Jennie L. Sikes
**Cc:** Pam Mallard
**Subject:** RE: Adam C. Drummond - Arrest: 01/24/2021

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Sergeant Sikes:

↩ Reply all | ⌄     🗑 Delete     Junk | ⌄     ⋯                                              ✕

Waite Thomas

**From:** M. Waite Thomas
**Sent:** Monday, March 08, 2021 12:04 PM
**To:** 'jlsikes@co.camden.ga.us' <jlsikes@co.camden.ga.us>
**Cc:** Pam Mallard <PMallard@tosclaw.com>
**Subject:** FW: Adam C. Drummond - Arrest: 01/24/2021

Sergeant Sikes:

I just called and left a voicemail for you regarding this issue. Figured I'd follow up with an email as well.

Will you please update us as to whether your IT department was able to solve this problem? Given what I observed on the CD, I suspect that you may have been burning "shortcuts" to the video footage but not the footage itself. Thank you for your assistance.

Waite Thomas

Website: www.tosclaw.com
Email:    wthomas@tosclaw.com
Fax:      (912) 638-9739
Phone: (912) 634-0955
St. Simons Island, Georgia   31522
300 Oak Street, Suite 200
Taylor, Odachowski, Schmidt & Crossland, LLC
M. Waite Thomas, Esq.

**From:** Jennie L. Sikes <jlsikes@co.camden.ga.us>
**Sent:** Monday, March 01, 2021 4:36 PM
**To:** Pam Mallard <PMallard@tosclaw.com>
**Subject:** Re: Adam C. Drummond - Arrest: 01/24/2021

Unfortunately ma'am, I haven't a clue on how to rectify that; it plays on my computer. I confirmed the cd and the thumb drive both opened up and plays (for my computer I select the video, right click on my mouse, select open with, then select Windows Media Player).

Re: Adam C. Drummond - Arrest: 01/24/2021

✕

↩ Reply all | ∨    🗑 Delete    Junk | ∨    ⋯

to do or not do; I will let you know.

Thank you.

SSgt J Sikes #1204
Jail Training Officer
Camden County Sheriff's Office
209 E. 4th Street
Woodbine, GA 31569
912.510.5104
jlsikes@co.camden.ga.us

**From:** Pam Mallard <PMallard@tosclaw.com>
**Sent:** Monday, March 1, 2021 11:00 AM
**To:** Jennie L. Sikes
**Cc:** M. Waite Thomas
**Subject:** Adam C. Drummond - Arrest: 01/24/2021

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

We received your letter and the thumb drive of the arrest footage. However, it still will not play on our system. The Windows Media Players shows each of the 14 clips as Zero Seconds and nothing plays. Please rectify this issue ASAP.

Thank you.

Georgia has a very broad Public Records Law. Virtually all written communications to or from State and Local Officials and employees are public records available to the public and media upon request. Camden County policy does not differentiate between personal and business emails. E-mail sent on the County system will be considered public and will only be withheld from disclosure if deemed confidential pursuant to State Law. If you have received this email in error please notify the Camden County, Georgia IT Department at 912-510.4357.

↩ Reply all | ∨    🗑 Delete    Junk | ∨    •••     ✕

# Re: Adam C. Drummond - Arrest: 01/24/2021

 **Jennie L. Sikes**           ↩ Reply all | ∨
Mon 3/1, 4:36 PM
Pam Mallard <PMallard@tosclaw.com>   ⌄

Sent Items

🗞   Phish Alert                          

Unfortunately ma'am, I haven't a clue on how to rectify that, it plays on my computer. I confirmed the cd and the thumb drive both opened up and plays (for my computer I select the video, right click on my mouse, select open with, then select Windows Media Player).

The only possible solution that can offer; is that I can forward this issue to my IT personnel in hopes that they could transfer/burn it in another format. However, I am not even sure if that is possible. But, I will forward my request to them today. Once I am advised of what they may be able to do or not do; I will let you know.

Thank you.

SSgt J Sikes #1204
Jail Training Officer
Camden County Sheriff's Office
209 E. 4th Street
Woodbine, GA 31569
912.510.5104
jlsikes@co.camden.ga.us

---

**From:** Pam Mallard <PMallard@tosclaw.com>
**Sent:** Monday, March 1, 2021 11:00 AM
**To:** Jennie L. Sikes
**Cc:** M. Waite Thomas
**Subject:** Adam C. Drummond - Arrest: 01/24/2021

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.
We received your letter and the thumb drive of the arrest footage. However, it still will not play on our system. The Windows Media Players shows each of the 14 clips as Zero Seconds and nothing plays. Please rectify this issue ASAP.

Thank you.



**JAMES K. PROCTOR, SHERIFF**
CAMDEN COUNTY GEORGIA
Post Office Box 699

February 25, 2021

M. Waite Thomas, Esq.
Attn: Pam
300 Oak Street
St. Simons Island, GA 31522

RE: Adam Christopher Drummond
Arrest Date: 01/24/2021

Dear Pam,

It was nice speaking with you; per our conversation on February 16, I was unable to send the files to your email (pmallard@tosclaw.com) due to the files being too large. I received a call from Christy, following up; I sincerely apologize for the delay please forgive me, as I had an unexpected emergency.

I hate that you were unable to view the received cd/dvd video footage of intake, incident, housing and release of your client Mr. Drummond. However, as requested; I have included said video feed on the included thumb drive, in hopes this will work for you.

If there is anything I can do for you, please don't hesitate.

Sincerely,

Jennie Sikes
Staff Sergeant– Jail Training Officer



**JAMES K. PROCTOR, SHERIFF**
CAMDEN COUNTY GEORGIA
Post Office Box 699

February 25, 2021

M. Waite Thomas, Esq.
Attn: Pam
300 Oak Street
St. Simons Island, GA 31522

RE: Adam Christopher Drummond
Arrest Date: 01/24/2021

Dear Pam,

It was nice speaking with you per our conversation on February 10. I was unable to send the files to your email (pmallari@tmcclaw.com) due to the files being too large. I received a call from Christy, following up. I sincerely apologize for the delay, please forgive me, as I had an unexpected emergency.

I hate that you were unable to view the received cd/dvd video footage of intake, incident, housing and release of your client Mr. Drummond. However, as requested, I have included said video feed on the included thumb drive, in hopes they will work for you.

If there is anything else I can do for you, please don't hesitate.



Sincerely,

[signature]

Jessie Tison
Certification - Jail Training Officer



**TAYLOR**
**ODACHOWSKI**
**SCHMIDT**
**CROSSLAND** LLC

ATTORNEYS AT LAW

REPLY TO:
M. WAITE THOMAS, ESQ.
300 OAK STREET
ST . SIMONS ISLAND, GA  31522
TELEPHONE: (912) 634-0955, EX. 116
FACSIMILE: (912) 638-9739
WTHOMAS@TOSCLAW.COM

February 4, 2021

Camden County Detention Facility
209 East 4th Street
Woodbine, GA 31569

RE:   Adam Christopher Drummond
      Arrest Date: 01/24/2021

Dear Sir or Madam:

Pursuant to the Georgia Open Records Act, O.C.G.A. § 50-18-70 et. seq., and on behalf of my client, Adam Christopher Drummond, I hereby request that you make available for review and copying all of the following files, records and other documents that refer or relate to:

1.      Any and all video footage at the Camden County Detention Facility from the time of his arrest to the time he was released from your custody.

2.      Certified copies of all documents, regardless of form, content, title, manner in which kept (electronic, computer, email, paper copy, or otherwise), all records, reports, photographs, videos, statements, investigator's reports, forensic reports, notes, tapes, transcript, 911 recordings, radio traffic and dispatch information, and any other reports regarding the above incident.

If there are any fees for searching or copying these records, please inform me if the cost will exceed $50.00.

Thank you for your cooperation with this matter.

@ 2:17 pm

PAM    w/ Thomas Office
          634-0955

Adam Drummond



Pmallard @ tosclaw.com

**SCM**
SOUTHERN CORRECTIONAL MEDICINE

**Receiving Screening**

Facility _Camden_

_Released_

Name ~~Duff~~ Drummond, Adam
ID # _____ Age _27_
DOB <mark>Redacted</mark> Race _W_ Gender _M_
Allergies _NKA_

| DATE _1/24/21_ | TIME _0721_ | (AM) PM | Recent Incarceration ○Yes ○No Where? _____ When? _____ |
|---|---|---|---|

Current Physician _NA_    Pharmacy _NA_    □Screening Refused (Must have signed refusal)

### INITIAL OBSERVATION

Redacted

### HISTORY

Redacted

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**ALLERGIES** (food, medication, environmental)  □ Yes  □ No

| ALLERGY | REACTION TYPE (Hives, Rash, SOB, Anaphylaxis, Shock) | ALLERGY | REACTION TYPE (Hives, Rash, SOB, Anaphylaxis, Shock) |
|---|---|---|---|
| Redacted | | | |
| | | | |
| | | | |



SOUTHERN CORRECTIONAL MEDICINE

Name **Drummond, Adam**

ID # _____

| ALCOHOL USE | SUBSTANCE/DRUG USE |
|---|---|
| Redacted | |

**COMMUNICABLE DISEASES**

Redacted

**CHRONIC ILLNESSES**

Redacted

**Other Significant Medical Conditions:**



**Medical Department**

Address: _____
Phone: _____
Fax: _____

<u>**Consent for Release/Exchange of Medical Information**</u>

I hereby authorize _____  .
(Name of Health Agency/Agencies)
To release my medical records to include HIV/AIDS.
Communicable/infectious disease diagnosis, progress notes, plan of care,
laboratory reports, imaging/x-ray reports, and medication information to
the Southern Correctional Medical Department.

I authorize Southern Correctional Medicine Medical Department and its
employees to release any and all medical records pertaining to me, my
medical records, or exchange medical information including lab reports,
progress notes, physician notes, imaging/x-ray reports, mediation therapy,
medication logs, sick call forms, mental health information, HIV/AIDS
information, communicable disease information, with whomever
necessary to appropriately provide for my health care needs.

Medical Records/Exchange of information release will stay into effect
until withdrawn in writing by the inmate/detainee by signing below I have
authorized for another Health Care Agency to release my medical records
to Southern Correctional Medicine Office Medical Department and I am
also authorizing Southern Correctional Medicine Office Medical
Department to release my medical records, or exchange medical
information with the agencies I have initialed above.

Inmate/Detainee's Name Printed Drummond, Adam  D.O.B. <span style="background-color:red;color:white;">Redacted</span>

Inmate/Detainee ID # _____

Gender: ( Male )  ( Female ) mJ  Race: W

Inmate/Detainee's Signature _____  Date 1/24/21

_____  Date 1/24/21
(Witness Signature)

Consent for Release Exchange of Medical Information MR 6000-002 (CN) REV 06/2020



## SOUTHERN CORRECTIONAL MEDICINE

## GENERAL CONSENT FOR MEDICAL TREATMENT

Name___Drummond, Adam_____ ID#_____

DOB___[Redacted]_____ Race___W___ Sex___M___

Facility___Camden_____

I understand that my care is under the supervision of Southern Correctional Medicine. I do hereby voluntarily consent to all medical examinations, treatments, procedures, and test reasonably necessary for my care.

I am aware that the practice of medicine is not an exact science and I acknowledge that no guarantees have been made as to the result of examinations, treatments, or medical care.

I understand I still have the right to refuse treatment as long as the refusal does not pose a public health threat.

I understand that signing this consent form will permit health services staff to provide me with needed medical services such as sick call, medications, and general health care.

I acknowledge that I have received the Inmate Orientation to Health Care Services explaining general consent and other medical processes.

Inmate Signature_____ Date 1-24-21

Witness Signature___M. Taylor_____ Date 1-24-21

General Consent for Medical Treatment ML 7000-003 (CN) Rev 05/2020



Name Drummond, Adam

ID # _____

---

## MENTAL HEALTH

# Redacted

## EXAMINATION

# Redacted

## DISPOSITION

# Redacted

### ADDITIONAL COMMENTS

_____

_____

I have answered all questions truthfully. I have been given instruction on how to obtain medical services.

Inmate Signature: _____  Date 1-24-21

☐ Interpreter used/ Name: _____  ☐ In Person  ☐ Via Telephone  ☐ Other____

Staff Name: Monique Taylor  Signature: M. Taylor  Date/Time: 1-24-21

Reviewed by: _____  Signature: Sanbray, FNP-BC  Date: 1/25/2021

Receiving Screening  pg 3 of 3  CT-4000-007 (HP)  Rev 06/2020



**SOUTHERN CORRECTIONAL MEDICINE**

**Coronavirus Screening**

Facility _Camden_

Name _Drummond, Adam_

ID Number
Redacted

DOB ▮▮▮▮ ace _W_ Gender _M_

Date _1-24-21_

Redacted

#3 Instructions

**For inmates/detainees with a fever and/or symptoms of respiratory illness and recent relevant travel history or close contact with a person with laboratory confirmed Coronavirus or their respiratory secretions in the past 14 days:**

a. Place a tight-fitting surgical mask on the inmate/detainee.

b. Promptly consult with a medical provider, preferable the Chief Medical Officer or designee.

c. Place the inmate/detainee in an airborne isolation room.

d. Implement standard, airborne and contact precautions, including use of eye protection.

e. Call the local and/or state health department for notification and to request guidance on medical evaluation and testing; currently, all testing is only available through coordination with the local and/or state health department.

f. If the inmate/detainee is referred to a local hospital, call the hospital in advance to notify of the recent relevant travel history and respiratory symptoms.

g. Notify the Health Services Administrator, Director of Nursing, and if the patient is in immigration custody – ICE Field Coordinator.



**SOUTHERN CORRECTIONAL MEDICINE**

**SAD PERSONS**

Facility _Camden_

Name _Drummond, Adam_
ID Number ___
DOB <span style="background:black;color:red">Redacted</span> Race _W_ Gender _M_
Allergies _NKA_

| | Description | | Score |
|---|---|---|---|
| | **Description** | | **Score** |
| **S** | Sex | Male | Redacted |
| **A** | Age | < 19 or > 45 Years of Age | |
| **D** | Depression | Admits to Depression or Decreased Concentration, Appetite, Sleep, Libido | |
| **P** | Previous Attempts or Psychiatric Care | Previous Attempt or Previous Inpatient or Outpatient Psychiatric Care | |
| **E** | Excessive Alcohol or Drug Use | Stigmata of Chronic Addiction or Recent Frequent Use | |
| **R** | Rational Thinking Loss | Organic Brain Syndrome or Psychosis | |
| **S** | Separated, Divorced or Widowed | Recent or on Anniversary | |
| **O** | Organized or Serious Attempt | Well-thought-out Plan or Life-Threatening Presentation | |
| **N** | No Social Support | No Close Family, Friends, Job or Active Religious Affiliations | |
| **S** | Stated Future Intent | Determined to Repeat Attempt or Ambivalent | |
| | | **SCORE:** | |

| SCORE | RISK | DIRECTIVE |
|---|---|---|
| 3-6 | Low | Follow up with Mental Health |
| 7-8 | Intermediate | Call Provider |
| >8 | High | Place on Suicide Watch/Crisis Evaluation |

Completed by _M. Taylor_        Date _1-24-21_   Time _0721_

SAD PERSONS CT-4000-033 (MH) REV 06/2020



## SOUTHERN CORRECTIONAL MEDICINE
## Use of Force Assessment

Inmate Name: Drummond, Adam    ID#: _____   DOB: <span style="background:black;color:red">Redacted</span>
Facility: Camden _____   Gender: M   Race: W _____

Date Force Used 1-24-21   Time (0156) 0739
Place of Exam: Holding _____

**Subjective: (Inmate's description of force applied and injuries sustained)**

<span style="color:red;font-size:2em">Redacted</span>

| Area Examined | No Injury | Describe Injury |
|---|---|---|
| Head/Neck | | |
| Maxilla/facial | | |
| Trunk | | |
| Abdomen | <span style="color:red">Redacted</span> | |
| Genitalia | | |
| Extremities | | |

<span style="color:red;font-size:2em">Redacted</span>

**Assessment:** ☐Normal Assessment after use of force  ☐Other _____
☐Contraindications to segregation

_____

**Plan:** _____
With contraindications to segregation placement OIC or higher must be notified.
**Date/Time Notified:** _____ **Person Contacted:** _____
**Education:** _____



SOUTHERN CORRECTIONAL MEDICINE

Indicate on the diagram below any body marks, such as bruises, discolorations, scabs, cut, bumps, or other questionable markings, regardless of how slight. You may draw lines between the titles and the corresponding areas of the human body picture.

Abrasion/ Burn

Ecchymosis (bruise)

Laceration/Cut/Scratch

Puncture

Pain

Spasm/Muscle Tenderness

*Abrasion*   *Bruise*
*Abrasion*

*Abrasion*

**Right**   **Left**   **Left**   **Right**

Description of Injuries: _____
_____
_____

Provider Orders: _____
_____
_____

Follow up appointment scheduled for _____ (date)

Nurse Signature *M. Taylor* _____ Date *1-24-21*

Use of Force Assessment CT 4000-025 REV 06/2020  PG 2 OF 2



Drummond, Adam Christopher
Drummond mug shot
01/24/2021 04:15

Video / Thumb drive
provided of:
· Cally port
· Intake A&B
· Incident
· Pro-restraint chair
· Cell / Phone call
· Release

· Strip search policy
· Intake information

# Inmate Housing History Report

Camden County Sheriff's Office
**ORI Number:** GA0200000

**Print Date/Time:** 02/02/2021 08:43
**Login ID:** sheriffhjsikes

**Inmate:** Drummond, Adam Christopher    **Jacket Number:** 76169 A    **Booking Number:** 2021-00000218    **Booking Date:** 01/24/2021 01:40

| Facility | Block | Cell | Bed | Assignment Date | Assignment End Date | Supervision Level |
|----------|-------|------|-----|-----------------|---------------------|-------------------|
| Jail | *Holding | H6 | 01 | 01/24/2021 04:18 | 01/24/2021 10:35 | |
| Jail | *Holding | H3 | 03 | 01/24/2021 01:40 | 01/24/2021 04:18 | |

**Total Transactions for Drummond, Adam Christopher: 2**